## WHITEMAN ET AL. v. WHITEMAN ET AL.

[No. 17,787.   Filed March 10, 1899.]

WILLS.—*Latent Ambiguity.*—*Extrinsic Evidence.*—Where the writer of a will wrote the preamble, "Whereas, I, ——————, on the 18th day of October, 1890, made my last will and testament of that date, do hereby declare the following to be a codicil to the same," evidence was properly admitted to show that the writer wrote "18th day of October" instead of —— day of February; that the will written on the —— day of February was fully, and in all of its material parts, copied into and incorporated in the instrument written October 18th, and that the will referred to in the preamble thereof was destroyed at the request of the testator, and in his presence.   *pp. 264-272.*

SAME.—*Latent Ambiguity.*—*Extrinsic Evidence.*—*Codicil.*—Parol evidence is admissible in a suit to contest the validity of a will to show that the preamble thereof purporting to be a codicil to a will of the same date was intended to refer to a will of a previous date which, after writing such preamble, was copied therein, and then destroyed at the request of testator, and in his presence.   *pp. 272-274.*

SAME.—*Evidence.*—*Executor as Witness.*—The executor of a will is a competent witness in support of the will as to matters accruing during the lifetime of the testator.   *p. 274.*

INSTRUCTIONS.—*When Correct as Applied to One Issue.*—Giving an instruction correct in form and substance as to one of the issues in the cause, not purporting to apply to other issues, and directing the jury to find for the defendant if that issue was determined in his favor, is not reversible error, where the jury was properly instructed as to the other issues in the cause in subsequent instructions given.   *pp. 274-276*

SAME.—*Issues Upon Which There Was no Evidence.*—The court is not required to instruct the jury as to issues upon which there was no evidence.   *p. 277.*

SAME.—*Wills.*—*Loss of Memory.*—No error was committed in refusing to instruct the jury in the trial of an action to contest a will that a person who has lost his memory is incapable of making a valid will.   *pp. 278.*

SAME.—*Abstract Rules of Law.*—The court is not bound to give instructions which state mere abstract rules of law, without explanation or qualification.   *p. 278.*

From the Vigo Circuit Court.   *Affirmed.*

*S. R. Hamill, J. G. McNutt, J. D. Early* and *A. M. Higgins*, for appellants.

*Geo. W. Kleiser, J. H. Kleiser, J. E. Lamb, J. T. Beasley, S. B. Davis, S. M. Reynolds* and *Geo. M. Davis*, for appellees.

DOWLING, J.—This is a suit to contest the validity of a will. The grounds of the contest are: (1) That the testator was of unsound mind; (2) that the will was unduly executed; (3) that the instrument is not a will, but a codicil to a will which was revoked; and (4) that the instrument is not a will, but a codicil to a will which has not been admitted to probate in any court.

Issues were formed, and a trial by jury resulted in a verdict in favor of the validity and due execution of the will. A motion for new trial was overruled, appellants excepted, and judgment was rendered ratifying the probate of the will. From this judgment the contestors appeal.

The facts are these: Ellis O. Whiteman was a childless widower, possessed of real and personal property of the probable value of $17,000, situated in Vigo county, Indiana, where he resided. During the latter part of his life he was afflicted with a painful and incurable disease, which rendered him almost helpless. Some time in February, 1890, he sent for one Murphy, a justice of the peace, with whom he was intimately acquainted, and instructed him to prepare his will. Murphy wrote the instrument, agreeably to the directions given him by Whiteman, and it was executed by the latter in the presence of two witnesses, who subscribed it at his request. This will was delivered by Whiteman to Murphy for safe-keeping. On the 18th of October, 1890, Whiteman again sent for Murphy, and told him he wished to give to Richard M. Doty and Elizabeth Doty each the sum of $300, and that this should be done by a codicil to his will. Murphy returned to his home to get the will executed in February, 1890, and brought that will to Whiteman. Murphy began

the preparation of the proposed codicil to this will, and when he had written the words, "Whereas I, Ellis O. Whiteman, on the *18th day of October, 1890,* made my last will and testament of that date, do hereby declare the following to be a codicil to the same," Whiteman interrupted him and said, "Why just copy the other (referring to the will of February, 1890) and put those two clauses in it, and that will be all right." Murphy then proceeded to copy the will of February, 1890, without change, except that the two clauses giving to Richard M. Doty and Elizabeth Doty $300 each were inserted. By mistake, Murphy had written the words, *"18th day of October, 1890,"* instead of "February —, 1890." The instrument, when completed, was signed by Whiteman in the presence of two witnesses, who, at his request, subscribed it in his presence. Whiteman thereupon directed Murphy to take the will of February, 1890, to the stove, and let him see him burn it, and Murphy did so, Whiteman remarking at the time, that he "didn't want to have but one will in existence." He also told Murphy to take the instrument just executed to his home, and keep it. No persons were present when this paper was executed, excepting Whiteman, Murphy, and the subscribing witnesses. Whiteman died December 19, 1890; and after his death no will, or writing purporting to be a will, excepting the instrument so executed by him on the 18th day of October, 1890, was found among his papers, or elsewhere. There was no proof that he made any will on the 18th of October, 1890, except the will in question.

In the 993 pages of testimony contained in the record we find the usual conflict of statement among the witnesses as to the condition of the mind of the testator, but no evidence as to the procuration of the will by the exercise of undue influence by any person. It is urged on behalf of appellants that the court erred in admitting *extrinsic evidence* "to *contradict* and *impeach*" the writing executed October 18, 1890, and claimed by appellees to be the last will and testament of Ellis O. Whiteman; that it erred in giving, of its own motion, in-

struction numbered two, and in refusing to give instruction numbered eighteen asked for by appellants. Several minor questions are discussed in the brief of appellants' counsel, but they will not require further mention.

The entire instrument, which had previously been admitted to probate as the last will of Ellis O. Whiteman, and which is the subject of controversy here (omitting the various devises and legacies) is in these words:

"Whereas I, Ellis O. Whiteman, on the 18th day of October, eighteen hundred and ninety, made my last will and testament of that date, do hereby declare the following to be a codicil to the same: I do hereby give and bequeath," etc.  *  *  *.

"I hereby nominate and appoint James F. Murphy, executor of this my last will and testament, hereby authorizing and empowering him to compromise, adjust, release, and discharge, in such manner as he may deem proper, the debts and claims due me. I do also authorize and empower him, if it shall become necessary, in order to pay my debts, to sell by private sale, or in such manner, upon such terms of credit, or otherwise, as he may think proper, all or any part of my real estate, and deeds to purchasers to execute, acknowledge, and deliver in fee simple. I hereby revoke all former wills by me made."

"In testimony hereof, I have hereunto set my hand and seal this 18th day of October in the year 1890."

　　　　　　[Signed]　　　"ELLIS O. WHITEMAN."

"Signed and acknowledged by said Ellis O. Whiteman as his last will and testament in our presence."

"Witnesses:　　　　　　CARL KRIETENSTEIN,
　　　　　　　　　　　　LEMUEL M. HOPEWELL."

From a very early day, the courts have found it necessary to apply with extreme rigor the rules excluding extrinsic evidence affecting the construction of wills, or the correction of alleged mistakes therein. The opportunities for fraud and the temptations to perjury which would be afforded by a re-

Whiteman *v.* Whiteman.

laxation of these rules forbid any deviation from the spirit and manner in which they have constantly been insisted upon and enforced. We have no inclination to abrogate or disregard any of these wise and indispensable restrictions, and we believe that cases of particular hardship arising from their application are less to be deprecated than the general inconvenience and peril which would ensue upon their lax or irregular enforcement. These rules, however, have always been held subject to certain reasonable exceptions, and it is important in every instance to determine whether the case falls within the rule or within the exception. In *Lord Cheyney's Case*, 5 Coke 68, "Sir Thomas Cheyney, Knt. Lord Warden of the Cinque Ports, 1 Eliz., made his will in writing, and thereby devised to Henry, his son, divers manors, and to the heirs of his body, the remainder to Thomas Cheyney, of Woodley, and to the heirs male of his body, *on condition* 'that he, or they, or any of them shall not alien, discontinue, etc.' And it was a question in the Court of Wards, between Sir Thomas Perot, heir general to the Lord Warden, and divers of the purchasers of Sir Thomas Cheyney, if the said Sir Thomas, should be received to prove by witnesses *that it was the intent and meaning* of the devisor to include his son and heir within these words of the condition (he or they) and not only to restrain Thomas Cheyney, of Woodley, and his heirs males of his body: but Wray and Anderson, Chief Justices, on conference had with other justices resolved, that he should not be received to such averment out of the will, for the will concerning lands, etc., ought to be in writing, and the constructions of wills ought to be collected from the words of the will in writing, and not by any averment out of it; for it would be full of great inconvenience that none should know by the written words of a will, what construction to make, or advice to give, but it should be controlled by collateral averments out of the will: But," it is said, "if a man has two sons, both baptized by the name of John, and conceiving that the elder, (who had been long absent), is dead, devises his land by his

will in writing to his son John, generally, and in truth the elder is living; in this case the younger son may in pleading or in evidence allege the devise to him and if it be denied, he may produce witnesses to prove his father's intent, that he thought the other to be dead; or that he at the time of the will made, named his son John, the younger, and the writer left out the addition of the younger."

In *Lord Walpole* v. *Earl of Cholmondeley*, 7 Durn. & East 134, it is said by Lord Kenyon, (p. 144): "There is no doubt but that parol evidence may be received in many cases to explain doubts in wills; and the rule is correctly described in the maxim of Ld. Bacon, which has been alluded to. Where extrinsic circumstances let in by parol testimony, explaining the situation of the testator's family and of the legatee's, introduce a doubt of the testator's intention, the same kind of evidence that introduced the doubt may be admitted to explain it. On that proceeded the case that I mentioned on a late occasion of *Beaumont* v. *Fell*, where a legacy was given by the will to *Catharine Earnley*, there being no such person in existence: there was no ambiguity on the face of the will, but the latent ambiguity was introduced by extrinsic evidence, and the same kind of evidence also shewed that there was a person of the name of *Gertrude* whom the testator called *Gatty*, which name the person who drew the will mistook for *Katy;* in that case therefore as parol evidence was admitted to shew the latent ambiguity, parol evidence was also admitted to explain it. It has been argued that the evidence which was rejected by the Court of Common Pleas ought to be received in many cases that might be put: I will not say that it ought not; but this, I think, we may safely lay down as a rule, that in order to make such evidence admissible the party proposing it must put his case into a situation to enable the Court to receive it; he must shew a latent ambiguity, without which the Court cannot receive it.  *  *  * Supposing *Lord Orford* had said to Coney, 'I have two wills in Moone's hands, desire him to send me the last will,' and

Moone had by mistake sent him the first, and that mistake had been shewn by parol evidence; there would have been a latent ambiguity, and it seems to me, (though the opinion is extrajudicial) that that ambiguity might have been explained by other parol evidence; on the same principle, as in the instance of canceling a will, where parol evidence is admitted to shew *quo animo* the act was done; or as in the case of a child destroying a deed."

In *Mann* v. *Executors of Mann*, 1 John's, Ch. Rep. 231, it is said by Chancellor Kent: "The question here is, whether, under the bequest of 'all the rest, residue and remainder of the *moneys* belonging to my estate at the time of my decease,' the widow be entitled to anything more than the cash which the testator left at his death; or whether, as the defendants have contended, she be entitled also to the bonds, mortgages and notes.

"This question has led to another, and that is, whether the parol evidence offered be admissible to explain the testator's meaning.

"It is a well settled rule, that seems not to stand in need of much proof or illustration, for it runs through all the books, from *Cheyney's Case*, (5 Coke 68) down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases: (1) Where there is a latent ambiguity arising *dehors* the will, as to the person or subject meant to be described; and (2) To rebut a resulting trust. All the cases profess to proceed on one or the other of those grounds. (*Hodgson* v. *Hodgson*, Prec. in Ch. 229, 2 Vern. 593; *Pendleton* v. *Grant*, 2 Vern. 517; *Harris* v. *Bishop of Lincoln*, 2 P. Wms. 135; *Beaumont* v. *Fell*, 2 P. Wms. 140; *Hampshire* v. *Pierce*, 2 Ves. 216; *Urich* v. *Litchfield*, 2 Atk. 372; *Lord Walpole* v. *Earl of Cholmondeley*, 7 Durn. & East 134, 138; *Lord Eldon, in Druce* v. *Dennison*, 6 Ves. 397.) If there be a mistake in the name of the legatee, or there be two legatees of the same name, or if

the testator bequeath a particular chattel, and there be two or more of the same description, or if from any other misdescription of the estate, or of the person, there arises a latent ambiguity, it may and must be explained by parol proof, or the will would fall to the ground for uncertainty. When a latent ambiguity is produced, according to the language of the courts (Lord Thurlow, in 1 Ves. Jr. 259, 260, 415, and Lord Kenyon, in 7 T. R. 148), in the only way in which it can be produced, viz., by parol proof, it must be dissolved in the same way; and there is no case for admitting parol evidence to show the intention upon a latent ambiguity; and the objection to supply the imperfection of a written will, by the testimony of witnesses, is founded on the soundest principles of law and policy."

These cases leave no doubt as to the principles upon which courts proceed when called upon to decide whether parol evidence shall be admitted to supply or contradict, enlarge or vary, the words of a will, or to explain the intention of the testator. The general rule is that such evidence cannot be admitted. The exceptions are the two cases specified by Chancellor Kent: (1) Where there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described, and (2) to rebut a resulting trust. It is to be observed that in recent years there has been a general tendency to greater liberality in the admission of parol evidence in respect to ambiguities in wills.

The decisions in this State are in harmony with the cases above cited. *Cleveland* v. *Spilman*, 25 Ind. 95; *Judy* v. *Gilbert*, 77 Ind. 96; *Cruse* v. *Cunningham*, 79 Ind. 402. See also the admirable chapter on Wills, in Browne on Parol Evidence 435.

It is clear that there is an ambiguity in the writing propounded by appellees as the last will of Ellis O. Whiteman, and that such ambiguity is a latent one. It is introduced by the extrinsic evidence showing: (1), that the writer of the

will by mistake wrote, "Whereas, I, Ellis O. Whiteman, on the *18th day of October*; 1890, made my last will and testament of that date," when he should have written, and intended to write, and was understood by the testator to write, "Whereas, I, Ellis O. Whiteman, on the — day of February, 1890, made my last will and testament of that date;" (2), that the will so referred to as having been made October 18, 1890, but which was really made February, — 1890, was fully, and in all its material parts, copied into and incorporated with the so-called codicil; and, (3), that the will referred to in the preamble to the supposed codicil as having been made October 18, 1890, was, at the time of the making of the latter, destroyed at the request of the testator, and in his presence.

If, in the case referred to by Lord Kenyon in *Lord Walpole* v. *Earl of Cholmondeley*, 7 Durn. & East 134, it was competent to prove that there was no such person in existence as *Catharine Earnley*, but that there was such a person as *Gertrude*, whom the testator called *Gatty*, which name the person who drew the will mistook for *Katy*, then, on the same principle, evidence is admissible here to prove that there was no such will as is described as of the date of *October 18, 1890*, but that there was a will of the date of *February* —, *1890*, and that the latter was incorporated in the will in controversy, and was then destroyed.

The second illustration made use of by Lord Kenyon in the same case is even more pointed: "Supposing *Lord Orford* had said to Coney, 'I have two wills in Moone's hands, desire him to send me the *last* will,' and Moone had, by mistake, sent him the *first*, and that mistake had been shewn by parol evidence, there would have been a latent ambiguity, and it seems to me (though the opinion is extrajudicial) that that ambiguity might have been explained by other parol evidence, on the same principle, as in the instance of canceling a will where evidence is admitted to shew *quo animo* the act

was done; or as in the case of a child destroying a deed." See, also, *Covert* v. *Sebern*, 73 Iowa 564, 35 N. W. 636.

Again, it is urged that the writing in controversy is not a will, but only a codicil to a will either canceled or not yet proved. This is a charge that the writing under examination is an *imperfect testamentary paper*. But, if this is true, that very circumstance lets in extrinsic evidence to establish its true character, or, as is said by Sir John Nicholl, in *Usticke* v. *Bawden*, 2 Add. Ecc. 249: "Where an allegation propounds an *imperfect* testamentary paper, it being a clear principle that the legal presumption is adverse to that paper, the allegation must contain facts of a sufficiently stringent nature to encounter, and repel, an adverse legal presumption, in order to insure its own admissibility."

And in the case of *Medlycott* v. *Assheton*, 2 Add. Ecc. 280, it is said by the same judge: "A codicil is, *prima facie*, dependent on the will; and the cancelation of the will is an implied revocation of the codicil. But there have been cases, where the codicil has appeared so independent of, and unconnected with, the will, that, under circumstances, the codicil has been established, though the will has been held invalid. It is a question altogether of *intention*. Consequently the legal presumption in this case may be *repelled*, namely, by showing, that the testatrix intended the codicil to operate, notwithstanding the revocation of the will."

*In re Gordon*, L. R. (1892) Probate 228, (67 L. T. R. 328) a testatrix executed a will in 1887, and a subsequent will in 1889, by which she revoked all previous wills. In 1891 she executed a codicil, which, by mistake, was described as a codicil to the will of 1887. It was held that probate might be granted of the codicil, together with the will of 1889, with the reference to the will of 1887 omitted.

The facts of the present case are, in some respects, similar to those *In re Sarah Dent*, 23 W. R. 417. A testatrix left a will dated June 3, 1868, and three codicils, dated respectively, January 30, 1870, April 30, 1870, and December 9,

1870, and the codicil of April 30, 1870, referred to "the last will of me, which bears date the 26th day of April, 1870."

Sir James Hannen, after stating the facts, declared that he had come to the conclusion that there never was any such will of the 26th day of April, 1870, but that the reference was to the codicil which was executed on April 30. The instructions were in all probability given on the 26th April; and when they were copied out, a false reference was made as to the date of the will. There were many instances of mistakes in date having been disregarded by the court when no doubt was entertained of the identity of the instrument. He thought that a mistake had been made of putting the 26th of April, 1870, for the 3rd of June, 1868, and therefore granted letters of administration with the will and the three codocils annexed.

Neither this case nor the preceding one, (*In re Gordon*) was contested, but as examples of procedure in such cases they are entitled to some weight.

The testimony of the writer of Whiteman's will removes every doubt as to the reference to the will intended. He was engaged in drawing up the proposed codicil on the 18th day of October, 1890. Whiteman had made a will February —, 1890. He had it before him, and he desired to make a codicil to it. The reference was to this will of February —, 1890, but by the mistake of Murphy, who was writing the intended codicil, the date at which he was so engaged in writing the codicil, viz. October 18, 1890, was inserted. When he had progressed so far, he was instructed by the testator to copy the entire will to which he had at first intended to make only a codicil. This was done, and the will of February —, 1890, was then and there destroyed by the direction of the testator.

There is yet another ground on which we think the testimony admissible. In giving an interpretation to a will, and to discover the intention of the testator, the court always has

the right to put itself in the place of the party, and then see how the terms of the instrument affect the property or subject-matter. With this view, evidence must be admissible of all the circumstances surrounding the author of the instrument, subject, however, to those limitations which are always observed when this rule is applied. 1 Jarman on Wills 380, note 1; *Daugherty, Adm.,* v. *Rogers,* 119 Ind. 254, 3 L. R. A. 847; *Price* v. *Price,* 89 Ind. 90.

Another circumstance in this particular instance, which would have much weight if the case were doubtful, is that the uncertainty is only as to matter of inducement or by way of preamble. The will is sufficiently definite both as to the persons intended and the property devised. Its sole defect, if it has a defect, is in a reference to an erroneous date. A direct issue was tendered upon this point by appellants. They alleged in their amended complaint that the writing was not a will, but a codicil to a will which had been revoked, or to a will which had not been admitted to probate. The evidence of the circumstances attending the execution of the will was properly admitted under this issue. That evidence clearly showed that there was no will of October 18, 1890, except the will in question, and that the latter was not a codicil, but a complete will in itself, revoking all other wills, and disposing of the entire estate of the testator.

Objection is also made to the examination of Murphy, the executor, as a witness to support the will. He was a competent witness, and there was no abuse of discretion on the part of the court in calling upon him to testify to matters occurring in the lifetime of the testator.

The court gave to the jury instruction numbered two, as follows: "(2) If you are satisfied from the evidence in this case that Ellis O. Whiteman, on the 18th day of October, 1890, when he made the instrument being contested in this action, had mind and memory sufficient to understand the ordinary affairs of life, and to act with discretion therein, and to know his next of kin, and their deserts, and had a general

knowledge of the property and estate of which he was possessed, and understood the business in which he was then engaged, he was not of unsound mind, and was possessed of mind sufficient to make a valid will, and you should find for the defendants; for the law does not undertake to measure a man's intellect, and define the exact quality or extent of mind and memory necessary to capacitate him to make a will, and, although a man's mind may be feeble, it may yet be sound."

The objection taken to this instruction, as stated in the brief of counsel for appellants, is that "it wholly ignores one of the main issues in the case, and flatly instructs the jury to find for the defendants if the testator's mind was sound. Inasmuch as undue execution of the will, and undue influence, exercised upon the testator, was one of the main issues in the case," etc.

The court had previously given an instruction in these words:

"(1) I instruct you that the instrument which is being contested in this suit is testamentary in form, and that though, upon its face, it is declared to be a codicil, yet that, as by its terms and provisions, it makes disposition of property of its maker, Ellis O. Whiteman, it is entitled to be taken and considered as his will, provided you find from the evidence that it was not procured by fraud or undue influence, and that at the time it was made said Ellis O. Whiteman was of sound mind, and that it was signed by him in the presence of two competent persons as witnesses, who, at his request, in his presence, and in the presence of each other, signed it as such witnesses, and that it has not been revoked; and this is true notwithstanding you may find from the evidence that at the time it was written and executed said Ellis O. Whiteman had previously executed a will which was then in existence, and which he, upon the execution of this, revoked by having it destroyed."

In at least ten of the instructions subsequently given to the jury, viz. the second, tenth, twelfth, fourteenth, fif-

teenth, sixteenth, eighteenth, twentieth, twenty-third, and twenty-fifth, the court directed their attention to the issue of the alleged undue execution of the will, and the effect of the exercise of undue influence in procuring it to be made. These instructions, together with instruction numbered one, fully. and plainly informed the jury that there were other questions to be considered by them besides that of the soundness or unsoundness of the mind of the testator, and it is impossible that they should have been misled by anything contained in instruction numbered two. Neither the authorities cited by counsel, nor their reasoning, sustain their objection to this instruction. It is not erroneous in form or substance. Applied to the one issue of the soundness or unsoundness of the mind of the testator, it states the law correctly, and it does not purport to instruct them on any other issue.

The case of *Conway* v. *Vizzard*, 122 Ind. 266, is very much in point. In that case the following instruction was given and excepted to: "(13) If the deceased, Anthony Gallagher, was of sound mind when the will in issue was made, although afterwards he may have become delirious or of unsound mind, *your verdict should be for the upholding of the will.*" The court say: "It is objected to these instructions that they virtually told the jury to find a verdict for the appellee in the event they found the testator of sound mind at the time of the execution of the will, without regard to the other issues in the cause." As we have said, instructions are not to be construed in detached portions, but must be construed as a whole. In the first instruction given to the jury at the request of the appellant the court said to the jury: "If the testator was of unsound mind at the time the will was executed, the plaintiff would be entitled to have it set aside; or, if said will was unduly executed, the plaintiff would be entitled to have it set aside; or, if it was obtained by undue influence or fraud, the plaintiff would be entitled to have it set aside; or if it was obtained by duress, the plaintiff would be entitled to have it set aside. We do not think the jury were

authorized to infer from instructions thirteen and fourteen, in view of what was said to them in instruction number one, given at the request of the appellant, that they should find a verdict for the appellee in the event they found the testator sane at the time he executed his will, without regard to the other issues in the case."

The instruction complained of in the present case did not misstate the law, nor was it contradictory of any other instruction given. Nothing more was required of the jury than that they should exercise ordinary intelligence in considering it in connection with the other instructions in the cause.

But upon another ground the objection to this instruction was properly overruled. There was no evidence that the execution of the will was procured by the exercise of undue influence. Out of the immense volume of the testimony counsel have been able to point out only one statement in the evidence—that of Minnie Blockson—in support of this issue. She testified as follows: "Well, it must have been, to the best of my knowledge now, about two years before he died, or a year and a half; and he said to me, 'Stephen was up here, and he said to me that you had told his girls that I had said they were nothing but paupers when they came up here, and would have starved to death if I hadn't moved them here.' I says, 'Uncle, I never said it.' He says, 'If you did say it, you and the girls had better straighten it up, or I will change my will.' I says, 'I can't help that, and I never said it, and I do not intend to straighten it up;' and he said, 'Well, it had better be straightened up,' and we just dropped it at that." This evidence proved nothing. Besides, it was utterly incompetent to establish undue influence. *Hayes* v. *West*, 37 Ind. 21; *Todd* v. *Fenton*, 66 Ind. 25; *Vance* v. *Vance*, 74 Ind. 370.

The court refused to give instructions numbered eighteen, asked for by appellants. It is in these words:

"(18) A person who has lost his memory is incapable of making a valid will; so, if the jury find that before and at

State, *ex rel.*, *v.* Workingmen's, etc., Assn.

the time Ellis O. Whiteman made his will he had lost his memory, then you should find for the defendants."

An instruction in that form was well calculated to mislead the jury. While it may be true that a total loss of memory, or the fact that it has become seriously impaired, may render a person incompetent to make a will, it is not every slight or partial loss of memory which creates such disability. A court is not bound to give to a jury instructions which state mere abstract rules of law, without explanation or qualification, when the giving of such instructions is more likely to perplex or confuse than to enlighten and assist them in arriving at correct conclusions. Moreover, the court had properly and sufficiently stated the law on the subject of the legal effect of the loss of memory on testamentary capacity in instructions numbered two, eleven, twenty-one, twenty-four, twenty-eight and four-sevenths, and twenty-nine.

There was no error in modifying instruction number nineteen, nor in the refusal of the court to give the other instruction asked for by appellants, for the reason that the law of the case was fully stated in the other instructions given. Finding no error in the record, the judgment is affirmed.