## PATE ET AL. v. BUSHONG.

[No. 20,254.    Filed December 17, 1903.]

WILLS.—*Construction.*—*Life Estate.*—Only a life estate in land will
pass to a devisee unless it affirmatively appears from the will
that a greater estate was intended.  *p. 537.*

SAME.—*Construction.*—*Life Estate.*—Testator by the first item of his
will gave all of his real estate and personal property to his wife
without stating in express terms or apt words the nature of the
title intended to be devised, and without in express terms giving
the wife power of disposing of the same, and in a subsequent
item gave the same real estate, after the death of the wife, to his
son, making certain charges against the property in favor of his
grandchildren.  *Held,* that the wife took a life estate in the land.
*pp. 534–538.*

SAME.—*Partial Intestacy.*—*Presumption.*—When a person makes a will
the presumption is that he intends to dispose of his whole estate
unless it is rebutted by the provisions of the will or other evi-
dence to the contrary.  *p. 538.*

SAME.—*Descriptions of Real Estate.*—*Mistake.*—*Evidence.*—Testator
owned 210 acres of land consisting of three tracts, all of which
he devised to his wife for life, without describing it, and in at-
tempting to devise the fee simple title to his son described one
tract as being in the "south quarter" instead of the "southwest
quarter" and another tract in "section twenty-nine" instead of
"section twenty-eight," the other portions of the descriptions
as to both tracts being correctly given.  *Held,* that extrinsic evi-
dence was admissible to remove the ambiguity in the first descrip-
tion, and, rejecting the false number of the section in the second
description, the description thereof was still sufficient, and in
view of the presumption that testator intended to devise his own
real estate, and not that of another, the descriptions were suffi-

cient to pass title to the land owned by testator. So far as *Funk* v. *Davis*, 103 Ind. 281, *Sturgis* v. *Work*, 122 Ind. 134, and *Judy* v. *Gilbert*, 77 Ind. 96 are in conflict with this rule they are overruled. *pp. 538–554.*

From Henry Circuit Court; *W. O. Barnard,* Judge.

Suit by Abraham Pate and others against Peter P. Bushong. From a judgment for defendant, plaintiffs appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*I. N. Addison, W. A. Brown, M. E. Forkner* and *G. D. Forkner,* for appellants.

*E. H. Bundy, J. M. Morris* and *D. W. Chambers,* for appellee.

MONKS, J.—Jackson Bushong died testate in Henry county, Indiana, in 1898, leaving his widow, Lydia Bushong, his son Peter P. Bushong (the appellee), and his five grandchildren, Minerva A. Pate, Phœbe T. Thompson, Hannah N. Addison, Cora C. Warrington, and Lila L. Ellison, children of a deceased daughter of the testator. Said will was legally probated. After the death of said widow, appellants brought this action against appellee for partition of the lands devised to the widow, upon the theory that she took the same in fee simple under said will.

The will, omitting the codicil which is not necessary to a determination of this cause, reads as follows: "First, I give, will, and bequeath to my beloved wife, Lydia Bushong, after my death, should she be living, all of my real estate and personal property that may be left of my estate after my death, except such as may be necessary to pay the expenses of my last sickness and funeral, which I direct to be promptly paid out of my estate, and also such amount of money as may be necessary to pay for a suitable monument for myself and wife, not exceeding $400, at the discretion of my executor. Article 2. I hereby appoint my son Peter P. Bushong my executor, with full power and authority to execute the provisions of my will, and

make all settlements with each of the hereinafter mentioned heirs, without bond or security. Article 3. After the death of my dear wife, should she outlive me, and after all expenses of her last sickness and funeral, and all other debts, if any, be paid out of the then remaining estate, I then will and direct as follows: Article 4. I will, give, and bequeath to my only son, Peter P. Bushong, the following real estate in Henry county, State of Indiana: The northeast quarter of section twenty-nine, township eighteen, range nine, containing 160 acres, and also twenty acres off the northwest quarter of section twenty-nine, town eighteen, range nine; and also thirty acres of land off the south end of the east half of south quarter of section twenty-nine, town eighteen, range nine, in fee simple, and then direct him to pay the following amounts out of the estate, to wit: Article 5. To my granddaughter or heirs, Minerva A. Karens, the sum of $450. Section 6. To my granddaughter and children, Phœbe T. Estell, the sum of $225. Article 7. To my granddaughter and her children, Hannah N. Addison, the sum of $225. Article 8. To my granddaughter, Cora C. Reddick, the sum of $225. Article 9. To my granddaughter, Lila L. Ellison, the sum of $500. Making a total amount of $1,625 to be paid to my five granddaughters, as named in the above sections, by my son, Peter P. Bushong, in the following order, to wit: Section 10. Three months after the death of my wife, P. P. Bushong shall pay to my granddaughter, Lila L. Ellison, or her heirs, if any, the sum of $100; and one year later the sum of $500 to be equally divided between the five heirs, $100 each, and to continue each succeeding year at the same ratio until each heir shall have received three full payments as stated above, provided, however, that there is to be no interest computed on any payment. Article 11. I further direct, give and bequeath to my son, Peter P. Bushong, after the death of my wife, and after all expenses of her last sickness and funeral ex-

penses are paid, all of the farming utensils, grain, hay, and stock of all kinds that may remain on the farm. Article 12. I further give and bequeath to my son, Peter P. Bushong, and my five grandchildren, all of the household goods to be divided equally among the six heirs, and should any of my granddaughters die intestate with no heirs living, I direct that the amounts be divided among those that are living. Given under my hand and seal this 17th day of August, 1893."

At the time the testator made said will, and at the time of his death, he was the owner in fee simple and in the possession of the following described real estate in Henry county, Indiana, and he was not the owner of any other lands from the date of his will until the time of his death: The northeast quarter of section twenty-nine, township eighteen north, of range nine east; also thirty acres off the south end of the east half of the southwest quarter of section twenty-nine, township eighteen north, of range nine east; also twenty acres off the west side of the following described lands, to wit: Commencing sixteen rods south of the northwest corner of the northwest quarter of section twenty-eight, township eighteen north, of range nine east, and running thence east ninety-six rods, thence south to the south line of said northwest quarter of said section, township, and range; thence west on the said line ninety-six rods to the section line; thence north to the place of beginning. The testator and his wife lived on the 160 acres described in the will, and the twenty-acre tract adjoined the same on the east. Appellee also lived on said tract in a house near his father's house, and continued to live thereon after his father's death. After the death of the testator, Peter P. Bushong (appellee) was appointed and qualified as executor of said will, and paid over to appellants, Cora C. Warrington and Phœbe T. Thompson, the legacies given them by items six and eight of the will, taking receipts therefor as executor.

Pate *v.* Bushong.

The questions presented by the record are:  (1) Did Lydia Bushong, the widow, take said real estate for life only under said will?  (2)  Was there a mistake in describing the twenty and thirty-acre tracts of land named in the will, and, if so, can the same be corrected, or so interpreted as to apply to the twenty and thirty-acre tracts owned by the testator at the time he made the will and at the time of his death?  (3)  Were Cora C. Warrington and Phœbe T. Thompson estopped from claiming a share in the lands as heirs of Lydia Bushong if she took a fee, by accepting of the executor the legacies given them by the will?  The trial court decided these questions in the affirmative, and rendered judgment in favor of appellee. If questions one and two are answered in the affirmative, it will not be necessary to determine the third.

The purpose of construing a will is to ascertain the intent of the testator, which must be given effect when ascertained, unless in violation of some rule of law.  To ascertain such intention the whole will must be considered, and no word or clause in the will is to be rejected to which a reasonable effect can be given.  In this State only a life estate will pass to a devisee unless it affirmatively appears a greater estate was intended.  §2737 Burns 1901, §2567 R. S. 1881 and Horner 1901; *Fenstermaker* v. *Holman,* 158 Ind. 71, 74, and cases cited.  It will be observed that the testator has not said in express terms that he devised said real estate to his widow in "fee simple," either in apt words or by the use of legal words of inheritance. Neither has he given his widow the power of disposing of said real estate in express terms, nor do we think such power can be implied from the language of the will.  The will gives to Peter P. Bushong in fee simple 210 acres of real estate, all the real estate the testator owned when he made the will and at the time of his death, and not what remained undisposed of or unexpended at the death of

his wife. It is clear, therefore, that the power of the widow to dispose of said real estate can not be inferred from items three and four. Item eleven describes a kind of personal property which is consumed or destroyed by use, and the language thereof shows that it was the intention of the testator that the expenses of his widow's last sickness and her funeral expenses should be paid out of the property described therein. It is evident that the power of the widow to sell the real estate devised to her can not be inferred from that item.

Having reached the conclusion that the widow was not given by implication or express words the power to dispose of said real estate, it is clear that, so far as the question of what interest she took in the real estate devised to her is concerned, the same is ruled by the case of *Fenstermaker* v. *Holman, supra,* and that she took only a life estate therein.

Appellants claim that appellee took no title to the twenty and thirty-acre tracts of land in controversy under the will of the testator, because said tracts are not described in the will. It will be observed that the twenty-acre tract is described as in section twenty-nine, while the twenty-acre tract owned by the testator when the will was made and at the time of his death was in section twenty-eight, adjoining the 160 acres described in the will. The thirty-acre tract is definitely described in the will, except that the words, "south quarter" instead of "southwest" quarter are written in the will.

When a person makes a will the presumption is that he intends to dispose of his whole estate, unless it is rebutted by the provisions of the will, or other evidence to the contrary. 2 Redfield, Wills (3d ed.), *116; *Cate* v. *Cranor,* 30 Ind. 292, 295, 296; *Roy* v. *Rowe,* 90 Ind. 54, 59, 60; *Mills* v. *Franklin,* 128 Ind. 444, 446; *Groves* v. *Culph,* 132 Ind. 186, 188; *Borgner* v. *Brown,* 133 Ind.

391, 396; *Korf* v. *Gerichs,* 145 Ind. 134, 136; *Woman's Union, etc., Soc.* v. *Mead,* 131 Ill. 338, 357, 358; *Vestal* v. *Garrett,* 197 Ill. 398, 404, 406. There is nothing in the will in this case or in the evidence to rebut this presumption. When the will was executed, and at the time of his death, the testator owned 210 acres of land, and no more. This he devised to his wife for life, and attempted to devise 210 acres in fee simple to appellee— all the land owned by him. While it is clear that the testator intended to dispose of all the lands he owned, the language used in describing the twenty and thirty-acre tracts, if construed literally, would defeat this intention, at least as to the twenty-acre tract. As we have already said, the intention of a testator must in all cases govern the construction of a will, unless in violation of some rule of law. To ascertain such intention, the court may hear evidence of the circumstances, situation, and surroundings of the testator when the will was made, and the state and description of his property. 2 Underhill, Law of Wills, §§909-911, 914; Wigram, Wills (2d Am. ed.), 56, 161; Schouler, Wills, §579; 1 Jarman, Wills (5th Am. ed.), 733-762; Page, Wills, §§816, 817; *Whiteman* v. *Whiteman,* 152 Ind. 263, 273, 274; *Patch* v. *White,* 117 U. S. 210, 217, 6 Sup. Ct. 617, 29 L. Ed. 860; *Black* v. *Richards,* 95 Ind. 184, 189-191; *Daugherty* v. *Rogers,* 119 Ind. 254, 258-261; *Dennis* v. *Holsapple,* 148 Ind. 297, 62 Am. St. 526; *Price* v. *Price,* 89 Ind. 90, 91. If by thus putting itself in the testator's place, the court is able to understand and apply the language of the will, it may give effect to the same although containing errors or repugnancies, so far as the intention of the testator can be determined, and will pronounce judgment with such repugnancies removed or errors corrected. It is well settled that when a latent ambiguity is disclosed by extrinsic evidence, it may be removed by extrinsic evidence. *Whiteman* v. *Whiteman, supra; Patch* v. *White, supra.*

It is true that extrinsic evidence will not be resorted to for the purpose of changing or varying the words of a will, but courts for a long period of years have felt compelled to deal with descriptions in such a manner as to reach the intent of the testator, when that seemed practicable, and by construction and by the admission of oral evidence to remove latent ambiguities. It is well established that however many errors there may be in a description, either of the devisee or the subject of the devise, it will not avoid the bequest if after rejecting the errors or false words enough remains to show with reasonable certainty what was intended when considered from the position of the testator. 1 Redfield, Wills (4th ed.), 580 *et seq.;* 2 Underhill, Law of Wills, §§909-914; O'Hara, Wills, 369, 374; Wigram, Wills (2d Am. ed.), 52-54, 144-147; Page, Wills, §§473, 487, 819; 3 Albany L. J. 263-267; *Trustees, etc.,* v. *Peaslee,* 15 N. H. 317; *Winkley* v. *Kaime,* 32 N. H. 268; *Allen* v. *Lyons,* 2 Wash. C. C. 475; *Patch* v. *White,* 117 U. S. 210; *Roman Catholic Orphan Asylum* v. *Emmons,* 3 Brad. Surr. 144; *Cleveland* v. *Carson,* 37 N. J. Eq. 377, 18 Cent. L. J. 68, and note pp. 69-71; *Willard* v. *Darrah,* 168 Mo. 660; Judge Redfield's note to *Kurtz* v. *Hibner,* 10 Am. Law Reg. N. S. 97-101; *Riggs* v. *Myers,* 20 Mo. 239; *Gaston's Estate,* 188 Pa. St. 374; *Black* v. *Richards, supra; Jackson* v. *Hoover,* 26 Ind. 511; *Whiteman* v. *Whiteman, supra; Miller* v. *Coulter,* 156 Ind. 290, 293; *Groves* v. *Culph,* 132 Ind. 186; *Skinner* v. *Harrison Tp.,* 116 Ind. 139; *Elliott* v. *Elliott,* 117 Ind. 380, 10 Am. St. 54; *Chappell* v. *Missionary Soc., etc.,* 3 Ind. App. 356, 50 Am. St. 276.

In *Patch* v. *White, supra,* the testator devised certain specific lots to each of his near relatives, and, among others, to his brother Henry a lot described as "lot number six in square 403, together with the improvements thereon erected." The court said: "Now, the parol evidence discloses the fact that there was an evident misdescription of

the lot intended to be devised. It shows, first, as before stated, that the testator, at the time of making his will, and at the time of his death, did not, and never did, own lot six, in square 403, but did own lot three, in square 406; secondly, that the former lot had no improvements on it at all, and was located on Ninth street, between I and K streets, whilst the latter, which he did own, was located on E street, between Eighth and Ninth streets, and had a dwelling-house on it, and was occupied by the testator's tenants—a circumstance which precludes the idea that he could have overlooked it. It seems to us that this evidence, taken in connection with the whole tenor of the will, amounts to demonstration as to which lot was in the testator's mind. It raises a latent ambiguity. The question is one of identification between two lots, to determine which was in the testator's mind, whether lot three, square 406, which he owned, and which had improvements erected thereon, and thus corresponded with the implications of the will, and with part of the description of the lot, and rendered the devise effective; or lot six, square 403, which he did not own, which had no improvements thereon, and which rendered the devise ineffective. * * * What he meant to devise was a lot that he owned; a lot with improvements on it; a lot that he did not specifically devise to any other of his devisees. Did such a lot exist? If so, what lot was it? We know that such a lot did exist, and only one such lot in the world, and that this lot was the lot in question in this cause, namely, lot number three, in square 406. Then is it not clear that the words of the will, 'lot number six, in square 403,' contained a false description? * * * It is settled doctrine that, as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things

that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject; as where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. The first kind of ambiguity, where there are two persons or things equally answering the description, may be removed by any evidence that will have that effect, either circumstances, or declarations of the testator. 1 Jarman, Wills, 370; Hawkins, Wills, 9, 10. Where it consists of a misdescription, as before stated, if the misdescription can be struck out, and enough remain in the will to identify the person or thing, the court will deal with it in that way; or, if it is an obvious mistake, will read it as if corrected. The ambiguity in the latter case consists in the repugnancy between the manifest intent of the will and the misdescription of the donee or the subject of the gift. In such a case evidence is always admissible to show the condition of the testator's family and estate, and the circumstances by which he was surrounded at the time of making his will. 1 Jarman, Wills, 364, 365; 1 Roper, Legacies (4th ed.), 297; 2 Williams, Executors, 988, 1032. Mr. Williams (afterwards Mr. Justice Williams) says: 'Where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake shall not disappoint the bequest. The error may be rectified. * * * (1) By the context of the will; (2) to a certain extent by parol evidence. * * * A court may inquire into every material fact relating to the person who claims to be interested under the will, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person intended by the testator.' Again he says, on page 1032: 'Mistakes in the description of legacies, like those in the description of legatees, may be rectified by reference to the terms of the gift, and evidence

of extrinsic circumstances, taken together. The error of the testator, says Swinburne, in the proper name of the thing bequeathed, doth not hurt the validity of the legacy, so that the body or substance of the thing bequeathed is certain: As, for instance, the testator bequeaths his horse Criple, when the name of the horse was Tulip; this mistake shall not make the legacy void; for the legatory may have the horse by the last denomination; for the testator's meaning was certain that he should have the horse; if, therefore, he hath the thing devised, it is not material if he hath it by the right or the wrong name.' See, also, Roper, Legacies, 297."

In *Allen* v. *Lyons,* 2 Wash. C. C. 475, the devise was of a "house and lot in Fourth street, Philadelphia," but it appeared on oral proof that the testator had no such property in Fourth street, but did own a house and lot in Third street, and it was held to pass under the devise.

In *Winkley* v. *Kaime,* 32 N. H. 268, the devise was of "thirty-six acres, more or less, of lot thirty-seven in the second division of Barnstead;" and it appearing that there was no such lot in that division, but that the testator owned land in lot ninety-seven in that division, it was held to pass under will.

In *Decker* v. *Decker,* 121 Ill. 341, the testator, by the terms of his will, devised twenty acres off the west half of the northeast quarter of the northeast quarter of section thirty-three, township eighteen north, of range eleven west. The evidence showed that the testator never owned the northeast quarter of the northeast quarter of section thirty-three, or any part of it, but did own the northwest quarter of the northeast quarter of the section. It was held that there was a latent ambiguity in the devise, the words describing the land being in part false, and that the false description might be stricken out, and the devise sustained as embracing the land owned by the testator.

In *Whitcomb* v. *Rodman,* 156 Ill. 116, 47 Am. St. 181, the testator devised parcels of land aggregating 180 acres (all that he owned), but in devises to two sons, respectively, described two forties in the southeast quarter of section twenty-two, adjoining those really owned by him in the northeast quarter of said section, leaving the latter undisposed of, and it was held the devise covered the forties owned by the testator in the northeast quarter of said section. The court said at page 125: "While words can not be added to a will, yet in arriving at the intention of the testator, as has been shown by the authorities, so much as is false in the description of the premises devised may be stricken out, and, after striking out the false description, if enough remains to identify the premises intended to be devised, the will may be read and construed with the false words eliminated therefrom. Adopting that rule here, the second and third clauses will read as follows: 'Second. To my son Joseph L. Rodman I will and bequeath 100 acres of land—sixty acres off of the west side of the southeast quarter of section twenty-two, forty acres being the   *   *   *   quarter of the   *   *   *   quarter of section twenty-two. Third. To my son Edward L. Rodman I will and bequeath forty acres of land, being the   *   *   *   quarter of the   *   *   *   quarter of section twenty-two.' Bearing in mind that the testator owned two forty-acre tracts in the northeast quarter of section twenty-two, and reading the two clauses of the will in the light of surrounding circumstances, we think all difficulty is removed in regard to the lands devised by these two provisions of the will. The testator, owning two quarters of a quarter of section twenty-two, devised one quarter to his son Joseph and the other quarter to his son Edward, and the two sons took and held the two tracts undivided."

In *Stewart* v. *Stewart,* 96 Iowa 620, 65 N. W. 976,

the testator gave to his son Fred D. Stewart "the south half of the northeast quarter of section thirty in township seventy-six north, of range seven west." This tract did not belong to the testator when the will was made or at the time of his death, but he owned at said times the south half of the southeast quarter of that section, which was not described in the will. The court disregarded the word "north" in the will, and held that the will gave said devisee said south half of the southeast quarter of said section thirty. The court said at page 627: "The evidence shows that the description of the land in question is in part wrong. After rejecting the erroneous portion, the remainder describes 'the south half of the east quarter of section number thirty,' etc. The section contains two tracts which may be properly spoken of as 'the east quarters,' and, under the rules of interpretation cited [*Jordan* v. *Woodin,* 93 Iowa 453; *Patch* v. *White,* 117 U. S. 210, 6 Sup. Ct. 617, 29 L. Ed. 860; *Eckford* v. *Eckford,* 91 Iowa 54, 58 N. W. 1093, 26 L. R. A. 370], we are of the opinion that extrinsic evidence may be received to show what quarter was intended by the testator."

In *Huffman* v. *Young,* 170 Ill. 290, the language of the will was: "Item 3. I give and devise to my son, Noah Young, * * * sixty-two and one-half acres off of the east side of the northeast quarter of section number twenty, township twenty-one north, of range eleven west." The testator did not own sixty-two and one-half acres off the east side, but did own sixty-two and one-half acres in the east half of said quarter section. The court said: "Striking out the words 'off of the east side,' the third item of the will will read: ' * * * also sixty-two and one-half acres of the northeast quarter of section number twenty, township twenty-one north, range eleven west.' This description is sufficiently definite to include the land in dispute."

Vol. 161—35

In *Merrick* v. *Merrick,* 37 Ohio St. 126-132, 41 Am. Rep. 493, the land devised was described as "the east half of the southeast quarter of said section twenty-eight," which testator did not own, but he did own "the east half of the northeast quarter of section twenty-eight." The court said: "The evidence fully supports the claim that, while the will on its face is free from ambiguity, the word south, in its third item, was inserted by mere mistake of the scrivener, the testator intending that the word north should be used. The sole question, therefore, is whether, on proof of such fact, it is competent for the court to declare that the east half of the northeast quarter of section twenty-eight passed by the will. * * * Rejecting the erroneous description, the word south, sufficient appears on the face of the will, in the light of the facts here disclosed, to warrant us in saying that by the will of Adam Merrick the other moiety, the east half of the northeast quarter of section twenty-eight * * * passed to Adam R. Merrick on the death of his mother. And thus the case is determined by a just and proper application of the maxim, *falsa demonstratio non nocet.*"

In *Case* v. *Young,* 3 Minn. 209, the testator gave to his wife "the one-third of all real estate;" to his son David, "the north half of the real estate;" to his son Jacob, "the south half of the real estate." There was no other description of the real estate contained in the will. The court, at page 215, said: "It is insisted that it does not describe any real estate whatsoever. Had the language used been 'of my real estate,' or 'of the real estate I now own,' or 'the real estate of which I shall die seized,' it is admitted that it would have been sufficiently certain. * * * But are we to suppose that the testator here intended to devise, or referred to the real estate of any other person? We ought not to presume that he intended an impossibility, but should ascertain, if possible, what his intention was and give effect to it. We held in the case of *Winslow*

v. *Baldwin,* 2 Minn. 174, *213, that where the meaning
of an instrument is certain and intelligible, the subject
or object to which it is to be applied may be ascertained
by extrinsic evidence, if it can be done without a departure
from the rational meaning of the words actually used;
and that if the meaning is involved in uncertainty, the
intention may be ascertained by extrinsic testimony, and
when so ascertained, will be taken as the meaning of the
parties, if such meaning can be distinctly derived from
a fair and rational interpretation of the language employed.
Applying this test to the case at bar, we find no difficulty
in ascertaining from the will itself, that it was the inten-
tion of the testator to devise lands to his sons; and extrinsic
evidence, if indeed that would be necessary, would be ad-
mitted to identify his own lands, as the subject or object
to which the term 'the real estate,' as used in the will,
applied."

In *Moreland* v. *Brady,* 8 Or. 303, the testator devised
to Margaret McGill "a certain parcel of ground or lots in
the city of Portland and numbered as follows, to wit:
No. block 187, lot No. 2;" to Esther Brady, "that lot
or parcel of ground, in the city of Portland, lot 1, in block
187." The testator did not own or claim any interest in
said lots when he made his will or at the time of his death,
but did own lots 3 and 4 in said block. The court, at page
313, said: "Then we apprehend there can be no ques-
tion of the admissibility of extraneous oral evidence to
show the state and extent of the testator's property, in
order to place the court in the same position the testator
was in at the time he made the will in question. This,
we think, is unquestionably the rule established by the de-
cided cases. This being done, it appears that the testator
had no such lots as those described as lots one and two
in the particular block named. This renders it certain
that the lots named were erroneous, and the words describ-
ing them can have no possible operation, and must be

rejected. The devise is the same as if the numbers of the lots had not been mentioned at all or had been named and the numbers left blank. We are then compelled to fall back upon the remaining portion of the description, to wit: 'A certain parcel of ground or lots in the city of Portland in block 187;' also 'that lot or parcel of ground in the city of Portland in block 187.' And by thus placing ourselves in the position of the testator, by oral evidence, at the time of the execution of his will, we find that there were two lots or parcels of ground in the city of Portland, and in block 187, belonging to the testator at that time and also at the time of his death. This renders the devise entirely certain from the language of the will as to the intention of the testator. The description would have been sufficient by merely naming the block and city in which the lots or land lay without specifying the numbers of them. The testator could not have intended to devise lots to which he never had any title, but must have intended to devise those which did belong to him. He had two just such lots or pieces of land as he names, and every way described as these are, with the single exception of this one false particular, and this is the very kind of case to which the maxim *falsa demonstratio non nocet* applies."

In *Cruse v. Cunningham*, 79 Ind. 402, the land was described in the will as follows: "Part of the donation lot number 158, in township number three north, of range eight west, containing 200 acres." It was claimed by the heirs of the testator that the description was so uncertain that the devise was void. The court said, at page 405: "In the case at bar, the testator had no heirs except his father and one brother. He bequeathed nearly all his real estate, including the land in controversy, to Charity Lodge No. 30, of Free and Accepted Masons, in Washington, Daviess county, for the purpose of building a Masonic lodge on certain specified lots, with power to sell all the other lots. The parol evidence, which was admitted over

appellants' objection, showed that donation lot No. 158, in town three north, of range eight west, was estimated to contain about 400 acres, in fact it contained 418 acres, of which ten acres were in the river; but it appeared that one-half of it was called 200 acres, and one-fourth of it 100 acres, and that Joseph Cruse, in his lifetime, was in possession of 200 acres of said donation lot 158, claiming to own it.  Some of the witnesses said he claimed 200 acres, or, perhaps, one-half of the donation lot; one witness said Joseph never claimed more than one-half the lot, and the evidence showed that the half claimed by Joseph, and of which he was in possession, was the same half for the recovery of which this suit is brought, and of which said Joseph died siezed, as both parties admitted on the trial. The evidence also showed that the other two quarters of said donation lot were owned by other parties.  Under the authority of the cases hereinbefore cited, the parol evidence was properly admitted, and it showed very clearly that the property devised by Joseph Cruse to Charity Lodge No. 30 was the same half of said donation lot which is sought to be recovered in this suit.  The court committed no error in admitting the will in evidence, nor in admitting the parol evidence in explanation of it."

In *Groves* v. *Culph,* 132 Ind. 186, the third item of the will gave to the widow "the house and lot on which I now reside, being parts of lots number fifteen and sixteen in the city of Rising Sun," for life.  The fourth item was as follows:  "I further will, give and devise the same lot number fifteen so devised to my said wife during her lifetime, together with all the appurtenances thereto belonging, to my youngest daughter, Eliza Jane Carpenter, and to her heirs in fee simple forever."  There was no other reference made to lot sixteen in the will, except in the item designated.  This court held that extrinsic evidence was admissible, and that the testator intended to devise to his daughter in fee what he devised to his wife for life, and

that the same passed to the daughter under the devise to her, although lot sixteen was not named in the devise to her.

From the many other cases to the same effect we cite the following: *Seebrock* v. *Fedawa,* 33 Neb. 413, 29 Am. St. 488; *Vestal* v. *Garrett,* 197 Ill. 398-406; *Hawkins* v. *Garland,* 76 Va. 149, 44 Am. Rep. 158; *Willard* v. *Darrah,* 168 Mo. 660, 90 Am. St. 468; *Wood* v. *White,* 32 Me. 340; *Howard* v. *American Peace Soc.,* 49 Me. 288; *Flynn* v. *Holman* (Iowa), 94 N. W. 447; *Chambers* v. *Watson,* 60 Iowa 339, 46 Am. Rep. 70; *Severson* v. *Severson,* 68 Iowa 656; *Button* v. *American Tract Soc.,* 23 Vt. 336; *Black* v. *Hill,* 32 Ohio St. 313; *Peters* v. *Porter,* 60 How. Pr. (N. Y.) 422; *Smith* v. *Smith,* 4 Paige (N. Y.) 271; *Pond* v. *Bergh,* 10 Paige (N. Y.) 140, 152; *Trustees, etc.,* v. *Colgrove,* 4 Hun (N. Y.) 362; *Dubois* v. *Ray,* 35 N. Y. 162; *Taylor* v. *Tolen,* 38 N. J. Eq. 91; *Mitchell* v. *Donohue,* 100 Cal. 202, 38 Am. St. 279; *Lutz* v. *Lutz,* 2 Blackf. 72; 3 Albany L. J. 263-267; note by Judge Redfield to *Kurtz* v. *Hibner,* 10 Am. Law Reg. N. S. 97-101.

The rule is thus stated in Wigram, Wills (2d Am. ed.), 144, 147: "If the description in the will is incorrect, evidence that a subject—having such marks upon it—exists, must be admissible, that the court may determine whether such subject, though incorrectly described in the will, be that which the testator intended. * * * So a description, though false in part, may, with reference to extrinsic circumstances, be absolutely certain, or, at least, sufficiently so as to enable a court to identify the subject intended; as where a false description is superadded to one which by itself would have been correct. Thus, if a testator devise his black horse, having only a white one, or devise his freehold houses, having only leasehold houses, the white horse in the one case, and the leasehold houses in the other, would clearly pass. In these cases the substance of the subject intended is certain, and, if there be but one such substance,

the superadded description, though false, introduces no ambiguity; and as, by the supposition, the rejected words are inapplicable to any subject, the court does not alter, vary, or add to the effect of the will by rejecting them. To such cases, the maxim, *falsa demonstratio non nocet,* may, with propriety, be applied." By the words, "inapplicable to any subject," the author means inapplicable because the subject is not in existence or does not belong to the testator.

It is said in Page, Wills, §819: "Where testator describes the property devised by township, range, section and quarter section, but does not locate it in the correct section or range or the like, the weight of authority is that extrinsic evidence is admissible to show exactly what real estate the testator owned. Under this view if he owns any real estate which corresponds in part to the description in the will, the court will reject the incorrect part of the description and will pass the realty conveyed by the correct description."

The cases of *Moreland* v. *Brady,* 8 Or. 303, *Riggs* v. *Myers,* 20 Mo. 239, referred to above, were cited with approval by this court in *Black* v. *Richards,* 95 Ind. 184, 190. The court said at page 190: "From the earliest period in the history of testamentary law, there has been manifested a disposition to apply a more favorable construction to wills than to ordinary legal instruments. Regret has sometimes been expressed at the disposition thus manifested, but the courts have nevertheless continued to countenance that line of judicial policy. It must, therefore, be accepted and acted upon as an established rule of construction at the present time. *Riggs* v. *Myers,* 20 Mo. 239; *Wilkins* v. *Allen,* 18 How. 385; *Cleveland* v. *Spilman,* 25 Ind. 95; *Brownfield* v. *Brownfield,* 12 Pa. St. 136; *Moreland* v. *Brady,* 8 Or. 303."

There are some cases which seem to hold that when the evidence of the circumstances, situation, surroundings, and property owned by the testator at the time he made

his will show that the testator did not own the land as described in his will, but owned other land to which a part of the description might properly apply, no latent ambiguity was disclosed, unless the words "my land," or other words stating in effect that the testator owned the land devised, are contained in the will. The rule established by the weight of the authorities and the better reason, however, is that such evidence does disclose a latent ambiguity, whether words stating, in effect, that the testator owned the lands devised are used or not; and if, by rejecting the false description or the false part thereof, sufficient remains, when considered from the position of the testator, to. identify the land intended with reasonable certainty, the same will pass under the will to the devisee. It is true that after rejecting the false description or the false part thereof, the words "my real estate," or words of like import, if used by the testator in making the devise, would be of great force in identifying the land intended, and might, alone or in connection with the true part of the description, if any, pass the land to the devisee in cases where, if the words were not used, the devise would fail for want of a description sufficient to identify the land. The enforcement of this rule does not reform or add any words to a will, for this can not be done, but enables the court to construe the will after rejecting the false part of the description and thus carry into effect the intention of the testator as expressed therein.

The thirty-acre tract is described in the will as follows: Thirty acres of land off the south end of the east half of the south quarter of section twenty-nine, town eighteen, range nine, in Henry county, Indiana. Said section twenty-nine contains two parts which answer to the description "south quarter"—the southeast quarter and the southwest quarter. When there are two things equally answering the description in a will, the ambiguity may be removed by evidence. 1 Jarman, Wills (6th ed.), 434, 435; 2 Under-

hill, Law of Wills, §910; *Black* v. *Richards,* 95 Ind. 184, 189, 190; *Cruse* v. *Cunningham,* 79 Ind. 402; *Skinner* v. *Harrison Tp.,* 116 Ind. 139, 141; *White* v. *Patch, supra,* p. 217. The agreed statement of facts in this case shows that the testator owned thirty acres off the south end of the southwest quarter of said section, and owned no other real estate in either of said quarter sections. The presumption is that the testator intended to devise his own real estate, and not real estate owned by another. 2 Underhill, Law of Wills, 1008; 2 Redfield, Law of Wills (3d ed.), *123; *Patch* v. *White,* 117 U. S. 210, 216, 220, 6 Sup. Ct. 617, 29 L. Ed. 860; *Moreland* v. *Brady,* 8 Or. 303, 314; *Stewart* v. *Stewart,* 96 Iowa 620, 625; *Flynn* v. *Holman* (Iowa), 94 N. W. 447, 448; *Decker* v. *Decker,* 121 Ill. 341, 355; *Huffman* v. *Young,* 170 Ill. 290, 296; *Lindgren* v. *Lindgren,* 9 Beav. 358, 361. Applying the rules applicable to such descriptions, there can be no doubt of the identity of the thirty acres devised to appellee.

The twenty-acre tract in controversy is described: Twenty acres off the northwest quarter of section twenty-nine, town eighteen, range nine, in Henry county, Indiana. The agreed statement of facts shows that the testator owned no land in the northwest quarter of said section, but did own twenty acres off the northwest quarter of section twenty-eight, town eighteen, range nine, adjoining the 160 acres in the northeast quarter of section twenty-nine devised to appellee. The testator did not own any other twenty-acre tract of land. This tract is correctly described in the will as twenty acres. The quarter section, town, and range are correctly given in the will. The only false description is the number of the section, given as twenty-nine, when it should have been twenty-eight. Rejecting the number of the section, as we are required to do, because it is false, the will devises to appellee twenty acres off the northwest quarter of section * * *, town eighteen, range nine, in Henry county, Indiana.

State, *ex rel.*, *v.* Flynn.

It is clear from the authorities cited that while courts of equity have no power to reform a will or add words thereto, yet a devise of real. estate by a description partly false may be effective if what remains after rejecting the false reasonably corresponds with real estate indicated by the extrinsic evidence. Keeping in view the foregoing rules of construction, and the presumption that the testator intended to devise his own property and not the property of another, and reading the will in light of the surrounding circumstances, it is evident that said testator intended to devise the twenty acres owned by him in the northwest quarter of section twenty-eight, and that appellee took the same in fee simple under said will. By rejecting the false number of the section, and giving effect to that part of the description of the twenty acres which is true, we add nothing to the terms of the will, and violate no positive rule of law or canon of construction. So far as *Funk* v. *Davis,* 103 Ind. 281, *Sturgis* v. *Work,* 122 Ind. 134, *Judy* v. *Gilbert,* 77 Ind. 96, are in conflict with this opinion they are overruled.

The conclusion we have reached renders the determination of· the question of the estoppel of Warrington and Thompson unnecessary.

Judgment affirmed.