Filed Oct. 30, 1891.

————————

· No. 15,272.

THE PENNSYLVANIA COMPANY v. NEWMEYER.

EVIDENCE.—*Railroad.*—*Action for Injuries.*—*Intoxication of Engineer.*—*How May be Shown.*—In an action against a railroad company for damages for injuries received in an accident, it is proper to show, in support of an allegation in the complaint that the employees in charge of the train were intoxicated at the time of said injury, that the engineer on said train was in the habit of drinking intoxicating liquor, and of visiting

a certain saloon, evidence having been introduced tending to prove that he had drank intoxicating liquor at the last station passed by the train before the injury, and about thirty minutes before the accident.

SAME.—*Unproved Fact.*— *Question Assuming Existence of.*— *Impropriety of Cross-Examination.*—*Control of Court Over.*—A question propounded to a witness is improper if it assumes the existence of a fact not proved or admitted. This applies to cross-examination. The extent to which a cross-examination may be carried is largely under the discretion of the trial court, and a cause will not be reversed for the exercise of such discretion, unless it appears that there has been an abuse of the discretion to the injury of the party complaining.

SAME.—*Mental Condition of Party.*—*Non-Expert Witness.*—A witness who is not an expert will not be permitted to give an opinion as to the mental condition of another, without first stating the facts upon which the opinion is based.

SAME.—*Immaterial Question.*—Where a question is asked of a witness, the answer to which is immaterial under the issues in the case, error can not be predicated upon the refusal of the court to permit the question to be asked.

EXAMINATION OF PERSON.—*Party not Required to Submit to.*—*Medical Experts.*—In the absence of a statute authorizing it, and none exists in this State, a party to an action is not required to submit his person to an examination of his injuries by surgeons appointed by the court for that purpose.

INSTRUCTIONS TO JURY.—*Railroad.*—*Action for Personal Injuries.*—*Speed of Trains.*—*Abstract Instruction as to.*—In an action against a railroad company for damages for personal injuries, it is not error to refuse to instruct the jury broadly that "A railroad company has a right to propel its trains over its road at a reasonable rate of speed, and when its track is in a good and safe condition, and the cars properly equipped and in safe condition, except as to latent defects, which by the highest degree of skill and care could not be discovered, it would not be negligence *per se* to run the train at a rate of speed of forty miles an hour."

RAILROAD.—*Passenger on Freight Train.*—*Increased Risk.*—*Obligation of Railroad Company.*—Whoever takes passage upon a freight train assumes the increased risk incident to the operation and management of such a train. When a railroad company does, however, accept passengers on its freight trains, it becomes bound by all the obligations of a common carrier of passengers upon a regular passenger train.

From the Owen Circuit Court.

*S. O. Pickens,* for appellant.

*D. E. Beem* and *W. Hickam,* for appellee.

COFFEY, C. J.—In the month of May, 1888, the appellee,

Newmeyer, shipped a car load of hogs from the town of Freedom, a station on the Indianapolis and Vincennes Railroad, to the city of Indianapolis. To accompany the hogs, he took passage in the caboose attached to the freight train in which the hogs were shipped. About two miles east of the station from which the hogs were shipped, the caboose in which the appellee was riding, and several other cars, were thrown from the track by reason of a broken axle under one of the freight cars, and thereby the appellee was injured.

The complaint charges, among other things, that the railroad track was negligently permitted to get out of repair and to become irregular, unlevel and to contain rotten ties, and that the train in which appellee was riding was negligently and carelessly run at a great and unusual rate of speed; that the cars in the train were old and defective, and that the employees in charge of the train were at the time of said injury intoxicated.

A trial of the cause resulted in a verdict and judgment for the appellee, from which this appeal is prosecuted.

The appellant assigns as error that the circuit court erred in overruling the motion for a new trial.

Many reasons were assigned in the motion for a new trial, but such reasons as have not been discussed in the brief of appellant must be regarded as waived. We will consider those discussed in the order in which they are presented.

On the trial of the cause the appellee propounded to one Stultz, a witness called by him, the following question : " You speak about Mr. Ryan being in that saloon before. How frequently had you seen him in that saloon before that time ? "

To this question the appellant objected, on the ground, as stated to the court, that the evidence sought to be elicited was immaterial, and would not in any way tend to prove any of the matters in issue, but the court overruled the objection, and the witness answered : " I did not stay there all

the time myself. I have seen him there several times. When he went down, pretty nearly every time the train would stop there, he would come in."

It had been shown that Ryan was the engineer in charge of the engine at the time the injury sued for occurred; and there was also evidence tending to prove that he had drank intoxicating liquor at Freedom, the last station passed by the train before the injury, and about thirty minutes before the accident.

We think the evidence was admissible as tending to prove the allegation that those in charge of the train were intoxicated at the time of the accident. The fact that Ryan, the engineer, was in the habit of drinking intoxicating liquor, and of visiting this saloon, if such was the fact, was proper to be considered by the jury, in connection with the other evidence in the cause, as tending to sustain the charge of intoxication.

Evidence that he was a teetotaler would have been competent on behalf of the appellant, as rebutting the charge of intoxication, and we think proof that he was in the habit of drinking, in connection with proof that he had been drinking intoxicating liquor within thirty minutes of the time the accident occurred, was admissible to prove the converse.

One Hicks, a witness called by the appellee, testified on his examination in chief that he was engaged as a laborer with the section gang upon the railroad near the place where the accident occurred, and was standing near the railroad track shortly before its occurrence, and that his attention was directed to the speed of the train immediately before the accident.

On cross-examination the appellant asked him this question:

"I will ask you to state to the jury what the speed of that train was as it passed you with reference to the speed ordinarily run there by the trains?"

The court sustained an objection to this question, on the ground that it was not cross-examination.

In addition to the objection that this was not strictly cross-examination, the question was subject to the further infirmity that it assumed a fact not proven or admitted, namely, that the witness had seen and had observed the speed of other trains at the same place. A question propounded to a witness should not assume the existence of a fact not proven or admitted.

An eminent writer on the law of evidence says : "Although upon cross-examination a counsel may put leading questions, those questions must not assume facts to have been proved which have not been proved, or that particular answers have been given contrary to the facts." Starkie Evidence (10th ed.), section 197.

Furthermore, the extent to which a cross-examination may be carried is largely under the discretion of the trial court, and a cause will not be reversed for the exercise of such discretion unless it appears that there has been an abuse of the discretion to the injury of the party complaining.

We do not think the court erred in sustaining an objection to this question.

It was in evidence that the appellee took several drinks of intoxicating liquor at Freedom shortly before he entered the train upon which he was injured. The physician who dressed his wounds near the depot at Spencer testified that the appellee did not appear to be entirely at himself, mentally, and that he was in a somewhat dazed condition of mind, and that during the time his wound was being dressed he took one or more drinks of liquor. It was also in proof that one Yockey brought him one of the drinks. A dispute having arisen as to whether one of the drinks procured at the saloon near the depot at Spencer by Yockey was for the appellee, the appellant propounded to the saloon-keeper the following question :

" State what was said by Mr. Yockey when he came after the brandy, with reference to whom it was for? "

Upon objection by the appellee the court refused to allow the witness to answer the question.

Assuming that what Yockey said at the time he procured the liquor was admissible in evidence as explanatory of the act of procuring it, we are unable to perceive its materiality. If the appellee drank the liquor, the question as to who procured it for him was wholly immaterial.

If the parties disputed about an immaterial matter the court was under no obligation to consume time in hearing evidence as to who was correct in such immaterial matter. If the matter then in dispute was material, such materiality does not appear from the record before us, and we must presume in favor of the correctness of the ruling of the circuit court.

The appellee testified, on his own behalf, that after receiving the injury for which he sues he did not recover entire consciousness until he reached Brooklyn Station, on his way to Indianapolis.

To rebut this testimony the appellant introduced one Lawson as a witness on its behalf, and after proving by him that he entered the passenger train at Spencer, and met the appellee on his way to Indianapolis a few hours after the accident, and between Spencer and the next station east had a conversation with him in relation to his injuries, thereupon the appellant propounded to the witness the following question :

" State whether or not he appeared conscious of what he was talking about? "

The court sustained an objection to this question.

It is a rule, too familiar to call for citation, that a witness who is not an expert will not be permitted to give an opinion as to the mental condition of another without first stating the facts upon which the opinion is based.

After stating the facts as a basis for an opinion, the ques-

tion should be so framed as to call for an opinion based upon such facts. *Staser* v. *Hogan*, 120 Ind. 207.

The question here does not conform to this rule, and for that reason the ruling of the court, in sustaining the objection thereto, was not erroneous.

The appellant, at the proper time, prayed the court to give to the jury the following instruction, namely : "A railroad company has a right to propel its trains over its road at a reasonable rate of speed, and when its track is in a good and safe condition, and the cars properly equipped and in safe condition, except as to latent defects, which by the highest degree of skill and care could not be discovered, it would not be negligence *per se* to run the train at a rate of speed of forty miles an hour."

The court refused to give this instruction as asked, but modified the same by adding thereto : " Provided that under all the circumstances of a given case such rate of speed was reasonable and a safe one," and gave the instruction as modified.

The appellant also asked the court to instruct the jury as follows :

"A railroad company has the right to set aside certain of its trains for carrying passengers, and certain others for the transportation of freight. So if you find from the evidence in this cause that the train upon which the plaintiff was riding at the time he received the injury in question was a freight train set apart for the transportation of freight exclusively, being composed exclusively of freight cars and caboose attached for the accommodation of the train employees and such persons as might desire to attend and take care of live stock being transported in such trains, of which regulation the plaintiff had knowledge, and that plaintiff was being carried on said train as an attendant upon and to feed, water and care for the car load of hogs which he was shipping by said train, not having paid any fare for so being carried, then, as to the plaintiff, the defendant was not re-

quired to exercise that high degree of care and skill with reference to the equipment, operation and management of said train as was required of it with reference to the equipment, operation and management of its passenger trains."

This instruction the court refused to give as asked, and modified the same by adding thereto the words: "But if you find from the evidence that the defendant did receive and undertake to carry the plaintiff upon its freight train, as a passenger, it will be bound by all the obligations of a common carrier of passengers upon a regular passenger train," and gave the same as modified.

The first instruction above set out, as asked by the appellant, states a mere abstract principle of law. Whether it would be correct as applied to a passenger train we need not stop to inquire, for we are here dealing with an injury received upon a freight train. The instruction assumes that when the track is in good and safe condition, and the cars properly equipped and in safe condition, except as to latent defects which by the highest degree of skill and care could not be discovered, no circumstances could exist which would render the speed of forty miles an hour negligence *per se*. No authority supporting this position, as applied to freight trains, has been furnished us, and we know of none. We think many circumstances might exist, even where the track was in good and safe condition, and the cars properly equipped, which would render such a rate of speed negligence. The train might be of unusual size, the cars improperly loaded, or loaded beyond their capacity, or there might be at the particular place danger of collisions with stock because the track was not fenced, or danger of collisions with teams at crossing on account of the absence of warnings, or many other circumstances which would render it imprudent and unsafe to run a freight train at such a rate of speed. The evidence in the cause is not before us and we are not, therefore, in a condition to know the circumstances surrounding this particular case. There may have

been evidence in the cause which rendered the modification made by the court necessary, in order to make the instruction applicable to the case as made by the evidence in the cause.

In Shearman and Redfield on the Law of Negligence it is said : " The proper test, therefore, with respect to the speed at which a train was run, is to inquire whether the condition of the track and equipment, the protection afforded to travellers by fencing the track from adjoining highways, or suitable warnings against danger, and similar circumstances, were such as to make that speed consistent with prudence." 2 Shearman and Redfield Law of Negligence (4th ed.)., section 460.

This, we think, is the true rule, whether applied to freight or passenger trains, and under it the instruction as asked was erroneous, and the court did not err in modifying the same before giving it to the jury.

Nor do we think the court erred in modifying the second instruction above set out, in the manner it did so modify it.

It is true that whoever takes passage upon a freight train assumes the increased risk incident to the operation and management of such a train, and the court so instructed the jury in this case ; but while this is true, when a railroad company does accept passengers on its freight trains, it becomes bound by all the obligations of a common carrier of passengers upon a regular passenger train. *Ohio, etc., R. W. Co.* v. *Dickerson*, 59 Ind. 317, and authorities cited.

We have carefully read the instructions given by the court in this case, and think they state the law correctly. They cover all instructions asked by the appellant and refused by the court, except those we have set out and considered.

Finally, it is contended by the appellant that the circuit court erred in refusing to require the appellee to submit

to an examination of his injuries by surgeons appointed by the court for that purpose.

The question here presented is one upon which the authorities are not entirely agreed. There are many cases which hold that the court may, in the exercise of a sound discretion, upon seasonable application, require the plaintiff to submit his person to a reasonable examination by competent physicians and surgeons, when necessary, to ascertain the nature, extent, and permanency of his injuries. *White* v. *Milwaukee, etc., R. W. Co.,* 61 Wis. 536; *Atchison, etc., R. R. Co.* v. *Thul,* 29 Kan. 466; *Schroeder* v. *Chicago, etc., R. W. Co.,* 47 Iowa, 375.

On the other hand, there are numerous authorities holding that in the absence of a statute upon the subject the courts do not possess the power to order and compel such examination. *Stuart* v. *Havens,* 17 Neb. 211; *Sioux City, etc., R. R. Co.* v. *Finlayson,* 16 Neb. 578; *Parker* v. *Enslow,* 102 Ill. 272; *Newman* v. *Third Avenue R. R. Co.,* 50 N. Y. Super. Ct. 412; *Roberts* v. *Ogdenburgh, etc., R. R. Co.,* 29 Hun, 154.

It will be seen from an examination of the authorities above cited, that the question before us is one not free from difficulty, and one upon which eminent jurists entertain widely different views. In the case of *Kern* v. *Bridwell,* 119 Ind. 226, the power of the court to make and enforce such an order was denied. In the case of *Hess* v. *Lowrey,* 122 Ind. 225, it was held that an application made by the defendant after the close of the plaintiff's evidence, where no reason was given for the delay, came too late. As no proper application for such an order was made in that case, the question as to whether the court possessed the power to make the order did not arise, and what is said upon that subject is *obiter,* and does not possess the force of a binding adjudication.

In the case of *Terre Haute, etc., R. R. Co.* v. *Brunker,* 128 Ind. 542, it was also held that the application came too late.

The Pennsylvania Company v. Newmeyer.

In the case of *Union Pacific R. W. Co.* v. *Botsford,* 141 U. S. 250, the sole question presented for the consideration of the Supreme Court of the United States was the question of the legal right and power of the court trying the cause to make and enforce an order compelling the plaintiff to submit to an examination with a view of ascertaining the nature, extent and permanency of the injuries on account of which damages were sought. After a careful examination of the authorities upon the subject it was held that the court, under the common law, did not possess the power and legal right to order and enforce such an examination. In that case Mr. Justice GRAY, speaking for the court, said : " No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. * * * The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass ; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country."

There is no statute in this State conferring upon the circuit court the power to make such an order as was asked in this case. If such power exists it is a power that inheres in the court, independent of any statutory provision. It is applicable alike to all, male and female, and is confined to an examination of no particular part of the person. To say that the power rests in the sound discretion of the court does not meet the case, for the real question is as to whether

the power exists at all. So far as we know, the courts of this State have never attempted to exercise such a power, and we are of the opinion that no such power is inherent in the courts. We think the better reason is against the existence of such a right, and, in the absence of some statute upon the subject, we do not think the courts should attempt to compel litigants, against their will, to submit their persons to the examination of strangers for the purpose of furnishing evidence to be used on the trial of a cause. Should a litigant willingly submit, there could be no legal objection to such an examination, and should he refuse to submit to a reasonable examination his conduct might possibly be proper matter for comment, but this is quite a different matter from compelling him, against his will, to submit his person to the examination of strangers.

In our opinion the court did not err in refusing the application in this case.

Judgment affirmed.

