Filed October 16, 1895.

No. 17,643.

SMITH *v.* THE STATE.

APPELLATE PROCEDURE.—*Jurors.*—*Opinions Expressed.*—*Finding.*— The finding of the trial court, that the charge that certain jurors had expressed opinions as to the merits of the case, is not sustained, is conclusive on appeal, where there is evidence supporting it.

SAME.—*Instructions.*—*Murder.*—*Self-defense.* — *Reasonable Doubt.*— The refusal of a requested instruction in a prosecution for murder, in which the facts claimed to have been proved by the defendant and the law applicable thereto are stated, is not prejudicial, where the instruction on the law of self-defense, which was the only defense relied upon, was full and complete and favorable to the defendant, and the law as to reasonable doubt and presumption of innocence was fully explained.

CRIMINAL LAW.—*Homicide.*—*Self-defense.*—The law will not, as a general rule, excuse one who repels a blow with the fist by stabbing his assailant.

INSTRUCTIONS TO JURY.—*Consideration of Evidence.*—*Criminal Law.*—*Impeachment.*—An instruction in a criminal case, that the jury should consider the impeaching evidence in estimating the

weight to be given the testimony of a witness, and also the fact, if they so find it, that the moral character of a witness has been successfully impeached, is proper.

SAME.—*Murder.*—*Self-defense.*— Self-defense is sufficiently covered by a charge in a prosecution for murder, requiring that, before conviction, even in the lowest degree, each of the jury must be satisfied under the evidence of the existence of every ingredient of the crime, and convinced of defendant's guilt beyond a reasonable doubt, "by the evidence of whatever class it may be, and considering all the facts and circumstances in the evidence as a whole," and stating that the burden is on the prosecution to prove that the accused actually killed the deceased "under such circumstances as the law will not excuse," where it was the only defense. .

From the Criminal Court of Marion County.

*Duncan & Smith, Van Vorhis & Spencer* and *McCullough & Spaan,* for appellant.

*W. A. Ketcham,* Attorney-General, *C. S. Wiltsie,* Prosecuting Attorney, and *J. B. Elam,* for State.

HOWARD, C. J.—The appellant was indicted for murder in the first degree, for the killing of Western B. Thomas. On the trial he was found guilty of manslaughter, and was sentenced to imprisonment in the State prison for eighteen years.

The only error assigned on this appeal is the overruling of the motion for a new trial.

Under this assignment, it is first contended that the court erred in giving to the jury, of its own motion, instruction number twenty.

The instruction reads as follows :

"If you believe, from the evidence, that any witness, before testifying in this case, has made any statements out of court, concerning any of the material matters, materially different and at variance with what he or she has stated on the witness stand, then the jury are instructed by the court that these facts tend to impeach either the recollection or the truthfulness of the witness,

and the jury should consider these facts in estimating the weight which ought to be given to his or her testimony, and if the jury believe from the evidence that the moral character of any witness or witnesses has been successfully impeached on this trial, then that fact should also be taken into consideration in estimating the weight which ought to be given to the testimony of such witness or witnesses."

It is objected that, "In giving the first part of the instruction, the court clearly invaded the province of the jury, as to the weight to be given to evidence, by telling the jurors, as a matter of law, what certain evidence tended to prove." And a dictum is quoted from *Guetig* v. *State*, 63 Ind. 278, at p. 282, to the effect that, "What evidence proves, or tends to prove, after it has gone to the jury, is a question solely for the jury to decide; and it is error for the court to interfere with their decision upon the weight of evidence, by an instruction."

In the Guetig case there was evidence introduced at the trial, which tended to prove that the appellant was subject to attacks of epilepsy. There was in that case also evidence tending to show that epilepsy is a disease which tends to produce insanity. The insanity of the appellant was urged as his main defense.

Under these circumstances, the court instructed the jury in that case that "this evidence would not be sufficient to raise a reasonable doubt of [appellant's] sanity at the time of the alleged commission of the homicide."

The instruction was condemned by the court, "because it directly states that certain evidence, which is legitimately before the jury, is not sufficient to prove a certain fact, or to raise a reasonable doubt of a certain fact."

There can be no question that the ruling so made

was correct. The instruction directly charged the jury as to what weight they should give to the evidence. That is a matter exclusively within the province of the jury. The decision in that case, however, goes no further; and we do not think it is authority on the point now before us.

The evidence referred to in the instruction in the case at bar, was concerning statements made by a witness out of court, materially different from those made by the witness in court. As to such evidence of statements made out of court, the words objected to in the instruction are : "The jury are instructed by the court that these facts tend to impeach either the recollection or the truthfulness of the witness, and the jury should consider these facts in estimating the weight which ought to be given to his or her testimony."

We think the plain intent of this clause of the instruction was to inform the jury as to the character or tendency of the evidence in question, namely, that it was impeaching; in other words, that its introduction was allowed because it tended to impeach the witness, and not because it tended to establish any issue in the case. The manifest purpose of the instruction was, therefore, to point out the nature of the evidence, and to limit the consideration to which it was entitled by the jury.

This was strictly the province of the court. Indeed, the court, in the very act of permitting the introduction of any item of evidence, must of necessity pass upon its tendency. If the evidence offered does not tend to prove any material issue in the case, or to impeach a witness, or to serve any other legitimate purpose of the trial, the court must exclude it. This is not weighing the evidence, but it is passing judgment upon the tendency, character, or purpose of the evidence.

While the jury are the sole judges of the facts, and

also have the right in criminal cases to determine the law (Cl. 5, section 1892, R. S. 1894; section 1823, R. S. 1881); yet, by the same statute it is required that the court charge the jury as to the law, and also, that "in charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict."

It was certainly necessary, for the information of the jury, that they should be told the nature of the testimony referred to, namely, that it was impeaching, that it was not introduced to prove any issue in the case, but solely tended "to impeach either the recollection or the truthfulness of the witness."

Otherwise, and had the instruction not been so given, the jury might have thought it their duty to apply the evidence to the issues in the case. It was thus in the interest of the appellant himself, as well as of the State, that the jury should be informed that the tendency or purpose of such evidence was solely to discredit a witness, and not to establish any issue, either for or against either party.

It is also claimed to be error that the court charged that "the jury should consider" the impeaching evidence introduced, in estimating the weight which ought to be given to the testimony of the witness; and should also, for the same purpose, take into consideration the fact, if they should so find it, that the moral character of any witness had been successfully impeached.

We do not think that in making this charge the court invaded the province of the jury. It cannot be doubted that, under the law, it is the duty of the jury to consider all evidence introduced on the trial and not withdrawn by the court. The evidence is introduced for that very purpose, namely, that it may be considered for what it is worth. What weight, if any, the jury may give to

any item of evidence is for them to say. But they are not justified in failing to give consideration to the evidence brought before them. And, surely, if it is their duty to consider the evidence, it cannot be error for the court to so tell them. The very purpose of the instructions of the court is to inform the jury of their duty. *Newport* v. *State*, 140 Ind. 299 ; *Deal* v. *State*, 140 Ind. 354.

It has been sometimes said that the word "should" in such a charge is of too imperative a character ; that the expression ought to be : "It is the duty of," or, "It is the province of the jury ;" or, "The jury ought to," or, "The jury may," consider, etc. *Lynch* v. *Bates*, 139 Ind. 206. And we are inclined to think that it might be better to use such permissive form rather than the seemingly imperative form here used. It would be better that there should not be even the appearance of error. Yet it is but a matter of expression, and the essential meaning is not changed. In any of the forms used, the jury are told only what is their duty, namely, to consider the evidence adduced on the trial. What weight, if any, ought to be given to such evidence, is for the jury alone to say ; and the instruction does not trench upon that right.

Neither is it true that the instruction singles out or discredits any witness or class of witnesses. The language used by the court is general in form, and applies to all the witnesses who may be affected by it, without specifically pointing out any.

It is next insisted that the court erred in refusing to give instruction number seventeen, asked by the defendant, which is as follows :

"And at this point the court instructs you as to the defense set up by the accused, that he killed Thomas in self-defense, that in order for the defendant to succeed under that plea, it is not required that the evidence

should satisfy that the killing was justifiable, under the doctrine of self-defense as hereinbefore given. Under this plea the defendant cannot be convicted if upon the whole evidence you or one of you entertain a reasonable doubt whether the killing was not done under such circumstances as rendered it justifiable."

The contention here made is that nowhere is there any instruction given which covers the point covered by this instruction, namely, that the rule of reasonable doubt applies to the defense of self-defense. We do not think this contention is justified.

It is not doubted that the only defense shown in the record is that of self-defense. The time, place and circumstances of the killing are not in dispute, nor is the fact that the killing was done by the appellant. The sole issue on the trial was whether the killing was excusable on the plea of self-defense. With that condition of affairs, we think the instructions given by the court fully covered that here requested. In two instructions, the tenth and the thirteenth, the court fully advised the jury as to the rights of the appellant under his plea of self-defense, the only plea made by him. In the eleventh instruction the presumption of innocence is dwelt upon, and the jury are admonished that the appellant cannot be convicted of even the lowest degree of crime covered by the indictment until the evidence satisfies them, and each one of them, of the existence of every ingredient of the crime charged. In the twelfth instruction the jury are fully informed on the doctrine of reasonable doubt as applied to the case; and they are told that before conviction they must be convinced beyond a reasonable doubt, "by the evidence, of whatever class it may be, and considering all the facts and circumstances in the evidence as a whole."

Even more than this, the court, in its first instruction,

after stating the charge as made in the indictment, sets forth the appellant's defense, making also specific allusion to the plea of self-defense, the only excuse urged, or that could be urged, by him for the killing. "To this indictment," says the court, "the defendant enters the general plea of 'not guilty.' Upon the issue thus joined, the burden is upon the State to prove, beyond all reasonable doubt, every material allegation of the indictment, that he actually killed Western B. Thomas, in manner and form, and at the time charged in the indictment, and that such killing was done under such circumstances as the law will not excuse."

Had the killing been done in self-defense the law would have excused it ; and that the killing was not so done, that such excuse does not exist, must be proved by the State, says the instruction, "beyond all reasonable doubt."

We think, therefore, that the jury were in fact fully informed that the rule of reasonable doubt applied to the whole case, and to every specific part of it, including the defense of self-defense. Consequently there was no error in refusing to give instruction seventeen as requested.

Complaint is next made that the court refused to give instruction number twenty-three, asked by the appellant, and in which the facts claimed to have been proved by him, with the law applicable thereto, are stated. These facts, and the law claimed to apply thereto, relate to appellant's plea of self-defense.

The court gave twenty-one carefully prepared instructions, in which the jury were very fully and fairly informed of their duty as to the whole case, and also as to the rules of law applying thereto. The instructions relating to self-defense were most favorable to the appellant.

As said, in *Koerner* v. *State*, 98 Ind. 7, "When the

court has put the whole case to the jury by proper and full instructions, as was done in this case," it is not necessary to instruct upon each separate item of evidence, nor to direct the jury to determine between the different theories of the State and the accused.

The tenth instruction given by the court, was as follows:

" The defendant insists that the killing of Western B. Thomas was done in self-defense and this requires the court to instruct you as to the doctrine of self-defense. One man may kill another under such circumstances as that the homicide constitutes no crime, but is justified by the law. The doctrine of self-defense as applied by the evidence in this case may be thus defined : 'Where a person being without fault, and is in a place where he has a right to be, so far as his assailant is concerned, is violently assaulted, he may, without retreating, repel force by force, and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force for that purpose. When from the acts of his assailant he believes and has reasonable ground to believe that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger or apprehended danger may be exercised by him, and he may use it to any extent which is reasonably necessary and if his assailant is killed as a result from the reasonable defense of himself he is excusable. The question of the existence of such danger, the necessity or apparent necessity as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the existing circumstances. Ordinarily one exercising the right of self-defense is required to act upon the instant and without time to deliberate and investigate,

and under such circumstances the danger which exists only in appearance is as real and imminent as if it were actual."

With this instruction, so full and complete on the law of self-defense, and so favorable to the appellant, and with others on the subject of reasonable doubt and on the presumption of innocence, and with still another on self-defense as an excuse for the killing of an adversary, we cannot see that the appellant suffered any harm by the refusal of the court to give instruction twenty-three, as requested.

It is contended that the verdict is not supported by the evidence. The verdict was for manslaughter. There is no question that the deceased was unarmed, and that the appellant cut his throat with a knife, causing death in a few moments. We think that from the evidence of those present, even from that of the appellant himself, the jury might conclude, without any reasonable doubt, that the appellant unlawfully killed the deceased, voluntarily and upon a sudden heat, and that he had not the excuse of self-defense for his act. It is uncertain, from the evidence, whether the deceased simply laid his hand upon appellant, in a sort of maudlin familiarity, or whether he struck at appellant with his fist after they began quarreling. It is certain, however, that the deceased was unarmed, and, at most, that, in their scuffle, he struck appellant with his fist. But, as a general rule, the law will not excuse one who repels a blow with the fist by stabbing his assailant. _Presser_ v. _State_, 77 Ind. 274; _Floyd_ v. _State_, 36 Ga. 91, 91 Am. Dec. 760; 21 Am. and Eng. Ency. Law, 1059. And the jury might well find from the evidence that there were no circumstances why the case at bar should form an exception to this general rule.

A like contention is made as to whether two of the

jury had not expressed opinions as to the merits of the case before they were selected to try it. The court tried this question, by bringing together the two jurors and the witnesses who had filed affidavits against them; and all were questioned under oath, when the court found that the charge was not sustained. There being evidence to support this decision, we cannot, under the well established rule, disturb it on this appeal.

There appearing no available error in the proceedings, the judgment is affirmed.

Filed October 16, 1895.