## HARBISON v. BOYD ET AL.

[No. 21,812. Filed November 28, 1911. Rehearing denied March 15, 1912.]

1. APPEAL.—*Supreme Court Rules.*—*Briefs.*—Where there has been a good faith effort to comply with the Supreme Court rules in preparing a brief, the questions therein presented will be considered, and all others are waived. p. 270.

2. WILLS.—*Probate.—Contest.—Instructions.—Consideration as a Whole.*—Where the jury was instructed that the material questions raised by the pleadings were whether the testator left a will and, if so, was he of sound mind when it was executed, was he unduly influenced and was the will duly executed, and that the burden was on the proponents of the will as to these four questions, and other instructions fully charged the jury on all the issues raised by the pleadings, an instruction that the real question is: What was the condition of the testator's mind, and was he under any restraint or unduly influenced at the time the will was executed, and that evidence showing the state of mind and surroundings of testator before and after the execution of said will was to be considered only in aiding the jury to determine said question, and another instruction that if the jury found that testator was possessed of monomania, but that the will was in no way affected thereby, and if, aside from such monomania, the testator possessed mind and memory sufficient to make a will, it should find that he was of sound mind and return a verdict for proponents, when considered with all the other instructions, were not misleading to the jury. p. 270.

3. WILL.—*Probate.—Contest.—Evidence Uncontradicted Except as to One Issue.—Instructions.*—Where all the evidence to support a will was uncontradicted, except as to the issue of mental ca-

pacity of the testator to make the will, instructions which in effect withdrew from the jury the questions of whether decedent left a will and whether it was formally executed, and leaving for determination only the question of testamentary capacity, were harmless.   p. 272.

4.  TRIAL.—*Instructions.—Error.—Cured by Other Instructions.*— The statement in an instruction, in an action to contest the probate of a will, that insanity is a disease of the brain, was not harmful to the objector when taken in connection with other instructions which told the jury that mental incapacity to make a will does not necessarily presuppose the existence of insanity in its technical sense.   p. 274.

5.  WILLS. — *Probate.—Contest.—Instructions.*—An instruction on the question of undue influence which told the jury that it might consider such evidence as was therein mentioned that might tend to show what disposition, if any, testator would probably have made of his property, if he had been in mental and bodily health and strength, and uninfluenced, was not objectionable for failure to limit the evidence to be so considered.   p. 274.

6.  EVIDENCE. — *Opinion Evidence.—Cross-Examination.—Extent.*— Where a physician, after stating facts on which his opinion was based, testified as a nonexpert that testator was a man of sound mind, the refusal of the court to permit hypothetical questions on cross-examination which involved matters only remotely connected with the matters elicited by the chief examination, and which were only proper to be put to an expert, was in the discretion of the trial court and no error was thereby committed.   p. 275.

7.  NEW TRIAL.—*Incompetency of Juror.—Sufficiency of Evidence to Show Competency.*—Where a cause assigned for new trial was that one of the jurors did not understand the English language, and was supported by the affidavits of said juror and two other persons showing that he could understand the English language but imperfectly, and against which the affidavits of ten of the jurors, showing that he understood and remembered the evidence and the instructions of the court, were presented together with affidavits from citizens who had known him many years, showing that he had accumulated a fortune by his thrift and energy and that in conversation he showed no inability to understand English, and the examination of said juror on his *voir dire* as a prospective juror in another cause was also presented showing that he could understand words in ordinary use, the conclusion of the court that said juror was not incompetent was sustained by the evidence.   p. 275.

8.  APPEAL.—*Refusal of New Trial.—Disqualification of Juror.— Conflicting Evidence.*—Where the evidence is conflicting as to the disqualification of a juror because of an alleged undisclosed ac-

quaintance with some of the parties, and his alleged subsequent misconduct, the action of the trial court in overruling a motion for new trial on such ground will not be reviewed on appeal. p. 276.

9. WILLS.—*Probate.—Contest.—Evidence.—Order of Introduction.* —In a proceeding to contest a will before probate the action of the court in requiring proponents in the first instance to make only a *prima facie* case on all the material issues raised by the pleadings, then requiring all the objector's evidence on the grounds of contest to be delivered, and permitting the proponents to rebut the same by evidence sustaining the will, is in accordance with the rule in such cases.   p. 277.

10. TRIAL.—*Reception of Evidence.—Discretion of Court.*—The order in which evidence is admissible is in the discretion of the court.   p. 277.

11. WILLS.—*Testamentary Capacity.—Monomania.*—The will of a testator is not rendered void for lack of testamentary capacity on a showing that he was a monomaniac, if the monomania did not enter into the disposition of his estate by the will in question. p. 278.

From Knox Circuit Court; *George W. Buff*, Special Judge.

Action by Mary E. Harbison objecting to the probate of a will offered by John T. Boyd and others.   From a judgment for proponents, the objector appeals.   *Affirmed.*

*Samuel W. Williams, Thomas Duncan* and *A. L. Harbison,* for appellant.

*Clarence B. Kessinger, B. M. Willoughby* and *James M. House,* for appellee.

Cox, J.—Appellees, who are surviving sons and widow of LeRoy Boyd, deceased, offered for probate in the lower court the instrument involved in this case as his last will. Appellant, a daughter of decedent, filed objections and contested the admission of the will to probate, on the grounds that at the time of the alleged execution of the will the testator was of unsound mind, that he was unduly influenced to execute the same, that the will was unduly executed, and that the same was not the last will of decedent.

A jury tried the issues formed by general denial, and returned a verdict sustaining the will, and from a judgment

admitting the will to probate this appeal is prosecuted upon alleged error on the part of the trial court in overruling appellant's motion for a new trial.

The criticism made by counsel for appellees of appellant's brief as not being a proper compliance with the rules of this court, is, in a measure, entirely just, and we find the complaint made in the brief of the inconsistency between certain of the instructions given by the court, to be but vaguely made in the propositions or points stated ,in the brief. It seems apparent, however, that counsel for appellant have made a good-faith effort to present the questions hereinafter considered, all others being waived by a failure to present them in appellant's brief. See *Ditton* v. *Hart* (1911), 175 Ind. 181, 93 N. E. 961, and cases cited on page 963.

In instruction two the court had told the jury that the material questions raised by the pleadings were: "Did the alleged testator, LeRoy Boyd, leave a will? If he left a paper purporting to be his will, Was he of sound mind when it was executed? If he left an alleged will, Was he unduly influenced in the making of it? Was the alleged will duly executed?" In instruction three the jury was told that the burden rested upon the proponents of the will, appellees here, of proving by a preponderance of the evidence that LeRoy Boyd left the will, of which probate was sought, as his last will, that he was of sound mind when he executed it, that he was not unduly influenced in the making of the will, and that the same was duly executed. The jury was instructed at length on the various elements and issues of the case, and counsel for appellant have severed two of these instructions, numbered ten and thirteen, from their connection with, and relation to, the instructions as a whole, and complain that they are in conflict with instructions two and three, in that they, in effect, take from the consideration of the jury all the questions involved in the issues, except those of the testa-

mentary capacity of the testator and the procuration of the execution of the will by undue influence. These instructions are as follows: " (10) The real question to be determined by the jury, under the instructions of the court, is: 'What was the condition of the mind of LeRoy Boyd, and was he under any restraint or unduly influenced by any person or persons on the 15th day of September, 1904, the day on which the will sought to be probated was executed?' Evidence has been introduced to show the state of mind and the surroundings of the testator, both before and after the execution of said will, but they are only to be considered by you, in the light of aiding you in determining what was the state of mind of the testator, and as to whether any undue influence was exercised over him, to secure the execution of said will, or the execution thereof in a certain way."

" (13) In this case, therefore, if you find that LeRoy Boyd at the time he executed the will in controversy was possessed of monomania, and that his monomania related to a subject foreign from the disposition of his property and foreign from those who were the natural objects of his care and bounty, and foreign from the subject of his will and from the beneficiaries thereunder, and at the time of the execution of the will he possessed mind enough to comprehend the business in which he was engaged, to know the extent and value of property, the number and names of the persons who were the natural objects of his bounty, their needs and deserts with regard to their treatment toward him, and to rationally apprehend his relation to his children and grandchildren and the manner he wished to distribute his property among them or withhold it from them and that he had a sufficiently strong and active mind during the preparation and execution of his will, and that his will was in noway affected by his mania, if you find he had any such mania, then you should find him of sound mind and return your verdict for the proponents."

No criticism is made of the form or substance of these

instructions, or that they failed to state the law correctly on the questions they were designed to cover, but it is urged that they were inconsistent with number two and three and were calculated to mislead the jury as to what questions were submitted for its determination. It is argued that by instruction ten the jury was given to understand that it was only to determine the issues of the testamentary capacity of the testator and undue influence, and that by instruction thirteen even the latter question was taken away from it. In other instructions the court fully charged the jury on all the issues raised by the pleadings, and, taking them all together, the jury could not well have understood that instruction ten left it only the two questions of the testator's mental competency and undue influence to determine, or that instruction thirteen did other than to tell it how it should find on the issue of testamentary capacity upon the hypothesis stated in the instruction. It might under instruction thirteen, have found for appellees on the issue of mental competency, and yet if the evidence warranted it, it must have understood that it could find for appellant, under other instructions given by the court, on one or all of the other issues. The closing words of instruction thirteen are not to be approved, but considering all the instructions together, the jury could not have been misled. *Bundy* v. *McKnight* (1874), 48 Ind. 502; *Davis* v. *Hardy* (1881), 76 Ind. 272, 276; *Conway* v. *Vizzard* (1890), 122 Ind. 266, 269, 23 N. E. 771; *Whiteman* v. *Whiteman* (1899), 152 Ind. 263, 53 N. E. 225.

But conceding that the court committed error in giving these instructions, as appellant claims, and that they had the full effect that it is argued they must have had—

3. number ten of withdrawing from the jury for determination the questions of whether a purported will was left by the decedent, and whether it was formally executed by him, and number thirteen of leaving the jury to determine only the question of testamentary capacity—it

still does not follow that this should work a reversal of the cause. The evidence conclusively shows that decedent left a purported will, written by his own hand, and duly signed by him as his will in the presence of two competent witnesses, who also signed it as such in his presence and in the presence of each other. The record contains no evidence in the remotest degree contrary to this, and no claim is made by appellant that a formally executed will was not left by Boyd. The proponents introduced the will in evidence. It was written by Boyd himself, and no indication of undue influence inheres in its provisions. He procured witnesses to sign it who were in nowise interested, but whom he had long known and been associated with. He told one of them where the will would be found in case of his death, so that it might be placed in the proper hands. It appears from the evidence that no one other than these witnesses knew that he had executed a will. Neither of the appellees had such knowledge, and neither had ever said anything to him about him making a will, nor had he to them. It affirmatively appears from the evidence that at the time the will was executed, no influence entered into the act other than his own strong will. Appellant offered no evidence to controvert all this, and none appears in the record. Under these circumstances, therefore, the only controverted issue was that of the mental competency of the testator to make the will, and it could not have harmed appellant for the court so to instruct the jury. *Whiteman* v. *Whiteman, supra; Blough* v. *Parry* (1896), 144 Ind. 463, 40 N. E. 70, 43 N. E. 560; *Stevens* v. *Leonard* (1890), 154 Ind. 67, 71, 56 N. E. 27, 77 Am. St. 446; *Barricklow* v. *Stewart* (1904), 163 Ind. 438, 443, 72 N. E. 128.

The rule is that where there is no dispute as to the facts, and no controversy as to the inferences that can be legitimately drawn from them, the question is one of law, and the jury may be directed to return a verdict for one party or

the other on any issue, according as either is entitled to recover under the law applicable thereto. *Sering* v. *Doan* (1864), 23 Ind. 455; *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135; *Ohio, etc., R. Co.* v. *Dunn* (1894), 138 Ind. 18, 36 N. E. 702, 37 N. E. 546; *Dumington* v. *Syfers* (1901), 157 Ind. 458, 62 N. E. 29; *Sunnyside Coal, etc., Co.* v. *Reitz* (1896), 14 Ind. App. 478, 39 N. E. 541, 43 N. E. 46; *Burns* v. *Smith* (1902), 29 Ind. App. 181, 64 N. E. 94, 94 Am. St. 268; 2 Elliott, Gen. Prac. §887 and cases cited.

Instruction nine, of which vigorous complaint is made, was one of the instructions of the series which dealt with the question of testamentary capacity, and is not well 4. constructed; but taken in connection with other instructions on the same question, and especially instruction fourteen, in which the jury was told that mental incapacity to make a will does not necessarily presuppose the existence of insanity in its technical sense, we cannot see wherein the statement in instruction nine, that insanity is a disease of the brain, could have in any degree been harmful to appellant. In other respects the instruction is more subject to complaint from appellees than appellant, for the reason that it adds to the accepted measure of mental capacity to make a will the further qualification that the testator must have mind and memory sufficient to *transact his ordinary business.*

Instruction sixteen, which charged the jury on the question of undue influence, and directed it what evidence might be considered on that question, is assailed for a failure 5. to limit the evidence to be so considered. This objection to the instruction is without just ground. In it the jury was told that it might consider such evidence as was therein mentioned that might "tend to show what disposition, if any, he would probably have made of his property, if he had been in mental and bodily health and strength, and uninfluenced."

Doctor McDowell was called as a witness for the proponents of the will, and after testifying that he had known the testator for twenty-five years, had seen him frequently, had talked with him and had been called, about three days before his death, as a physician attendant upon him, and after stating that the cause of death was acute uremic poisoning, gave his opinion, as a nonexpert witness, in answer to a proper question, that the testator was a man of sound mind. A broad and extensive cross-examination of this witness was permitted in behalf of appellant, but it is nevertheless claimed that the court committed harmful error in sustaining objections to certain of appellant's questions. The court committed no error in this matter. The questions involved matters only remotely, if at all, connected with the matter elicited from the witness by the chief examination, and, moreover, were hypothetical questions only proper to be put to and answered by an expert, and for these reasons they were clearly within the broad discretion of the trial court to control the cross-examination of witness. *Pennsylvania Co.* v. *Newmeyer* (1891), 129 Ind. 401, 28 N. E. 860; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 41 N. E. 336; *Shields* v. *State* (1897), 149 Ind. 395, 49 N. E. 351; *Heath* v. *Sheetz* (1905), 164 Ind. 665, 671, 74 N. E. 505; *Eacock* v. *State* (1907), 169 Ind. 488, 501, 82 N. E. 1039; *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560, 61 N. E. 797; *Conklin* v. *Dougherty* (1909), 44 Ind. App. 570, 89 N. E. 893; 2 Elliott, Gen. Prac. §658.

As one of the causes for a new trial, it was charged that one of the jurors who tried the cause "did not understand the English language." This cause of the motion for a new trial was supported by the affidavit of Hulen, the juror in question, on the authority of *Lafayette Plank Road Co.* v. *New Albany, etc., R. Co.* (1859), 13 Ind. 90, 74 Am. Dec. 246, and the affidavits of two others, the substance of all being that he could understand the English language but imperfectly. Against this showing the

affidavits of ten of the jurors were presented, showing that Hulen could understand the English language, that he was attentive to the proceedings of the trial, and in the jury room had a recollection of the evidence and instructions of the court equal to the others, entered vigorously into the discussions, and was persistent and tenacious in contending for a verdict for appellant, even when the rest of the jury had voted for a verdict sustaining the will. Several of the jurors, it appeared from their affidavits, had served with him in other cases during the term, and in all these cases he had, apparently, had no difficulty in understanding the proceedings. Other affidavits were also presented from a number of citizens who had known him many years and it appeared from these that he had lived in Knox county all his life—nearly fifty years—and had accumulated a fortune of $40,000 by his thrift and business sagacity. It appears that the makers of all these affidavits had frequently talked with Hulen in the English language, and that he had shown no inability to understand it. The examination of Hulen on his *voir dire,* as a prospective juror in a prior case at the same term of court, taken by the official reporter, was also presented in support of his competency, and therein it appeared that he had testified that he could not understand some of the words the lawyers used and the words found in the statutes, but that he could understand words in ordinary use. Counsel for appellant had the opportunity to, and did examine Hulen, and whatever difficulty he labored under in speaking or understanding the English language must have been more or less obvious at the time, but no objection was then made. The trial court's conclusion from the facts outlined above, that the juror was not incompetent, was sustained by the evidence.

The disqualification of another juror on account of an alleged undisclosed acquaintance with part of the
8. proponents and the testator, and his alleged subsequent misconduct as a juror, are made causes for a

new trial and supported by affidavits. Counter-affidavits were presented in opposition to a new trial on this ground, made by the juror in question and others, which were amply sufficient to sustain the court's finding that no such disqualification or misconduct had existed or occurred. The rule is that in such case this court will not review the action of the trial court where the evidence is conflicting. *Clem* v. *State* (1870), 33 Ind. 418; *Miami Valley Furniture Co.* v. *Wesler* (1874), 47 Ind. 65; *Stevens* v. *Stevens* (1891), 127 Ind. 560, 26 N. E. 1078; *Smith* v. *State* (1895), 142 Ind. 288, 41 N. E. 595; *Stevens* v. *Leonard* (1900), 154 Ind. 67, 56 N. E. 27, 77 Am. St. 446; *Stamets* v. *Mitchenor* (1906), 165 Ind. 672, 75 N. E. 579; *Stroup* v. *Graham* (1909), 173 Ind. 194, 89 N. E. 849, and cases cited.

Complaint is finally made of the order in which the trial court required the evidence to be presented to the jury. The proponents on the trial were required, in the first instance, to make a *prima facie* case only, upon all the material issues raised by the pleadings. Following this, the objector was required to deliver her evidence on all the grounds of her contest, and this evidence the proponents were permitted to rebut by evidence sustaining the will against the assault of the evidence for the objector. This was not error, but in accordance with the rule in contests before probate, and in any event this order was within the discretion of the court as to the order of the admission of evidence. *Miller* v. *Coulter* (1901), 156 Ind. 290, 59 N. E. 853; *Steinkuehler* v. *Wempner* (1907), 169 Ind. 154, 81 N. E. 482, 15 L. R. A. (N. S.) 673; *Hoffbauer* v. *Morgan* (1909), 172 Ind. 273, 276, 88 N. E. 337.

The verdict was right on the evidence. The testator had been a very successful business man, banker and farmer, and had so continued up to his last sickness, a few days before his death at the age of seventy-one years. He wrote the will in controversy himself, about four years before his death, and had it properly attested by competent witnesses. He

had, so far as the evidence discloses, consulted with no one about making a will, and no one had made any suggestion to him about so doing.   No one but himself and the witnesses to it knew that he had made a will, until after his death. The will itself bears inherent evidences in its substance and effect of being the creation of a clear and strong mind, and positive will, as well as inherently showing a reason for not providing as amply for appellant as for his sons; and such reason is supported by the evidence.   A great number of witnesses testified that he had always been a man of sound and vigorous mind.   It is true that appellant produced much evidence which showed that in the later years of his life the testator had a mania on one subject, and on this subject a number of witnesses testified that he was of unsound mind, and this may be true; but even if so, it is apparent that beyond that, even the testimony given for appellant does not clearly show a lack of testamentary capacity, for it does not appear that any mania he had entered into the disposition of his estate by the will in question, but the contrary.

The judgment of the trial court is affirmed.

NOTE.—Reported in 96 N. E. 587. See, also, under (1) 3 Cyc. 388; (2, 3) 40 Cyc. 1334; (4) 38 Cyc. 1782; (5) 40 Cyc. 1337; (6) 16 Cyc. 28; 40 Cyc. 2511; 19 Am. Rep. 410; (7) 29 Cyc. 1013; (8) 3 Cyc. 366; (9) 40 Cyc. 1330; (10) 38 Cyc. 1352; (11) 40 Cyc. 1013. The authorities on the general question what is testamentary capacity are collated in 27 L. R. A. (N. S.). 2.