## ESSEX *v.* MILLIKAN ET AL.

[No. 13,020.   Filed December 20, 1928.]

400

*Charles T. Hanna, Thomas A. Daily* and *Otis E. Gulley,* for appellant.

*Taylor & Carter* and *Blessing & Stevenson,* for appellees.

McMAHAN, P. J.—Action by Bert Essex against Frank M. Millikan and Isaac Pinkus on an alleged oral contract to recover a broker's commission for negotiating a written lease on real estate owned by the defendants. The first paragraph of complaint alleges an agreement on the part of the defendants to pay plaintiff a two per cent. commission for procuring a twenty-year lease. The second paragraph is on *quantum meruit.* Appellees filed a cross-complaint asking damages on account of representation alleged to have been made by appellant. The cause was tried by the court.

The facts were found specially and are, in substance, as follows: The defendants, hereafter referred to as "appellees," being the owners of certain real estate in Indianapolis, employed appellant to get them a tenant that appellees would accept, for which services appellees agreed to pay appellant a commission of two per cent. of the total amount of rental. On December 13, 1917, appellant informed appellees he had found a person who, he believed, would be an acceptable tenant, and, in order to induce appellees to execute a lease to the proposed tenant, appellant represented to appellees that the proposed tenant had $20,000 on deposit in the National City Bank; that appellees, on investigation, found that such person had a deposit of only $22.25 in

such bank; that thereupon appellees signed and delivered to appellant a lease in favor of the proposed tenant, but, because of the financial irresponsibility of the proposed tenant, appellees instructed appellant not to deliver such lease to the proposed tenant until he had furnished a satisfactory bond guaranteeing the payment of the rent and to secure appellees against any loss occasioned by the changes and repairs contemplated as set out in the lease; that appellant took such lease with the agreement that the same would not be delivered to the proposed tenant until such bond had been furnished; that such bond was never furnished; that the lease was never delivered to such tenant nor did the tenant ever move into or offer to move into the property under the agreement between appellant and appellees. Appellant was to be paid for his services $750 when the tenant moved into the property, and the balance at the end of the first year of the tenancy. Appellees, when they made the changes in the building as mentioned in their cross-complaint, knew of the financial irresponsibility of the proposed tenant and that he had not furnished the bond which was a condition precedent to the delivery by appellee of the lease signed by them. Before commencing this action, appellant made demand for payment of the amount of the commission which he claimed was due him. Upon these facts, the court concluded, as a matter of law, that appellant was not entitled to recover on his complaint and that appellees were not entitled to recover on their cross-complaint. Judgment accordingly, from which appellant appeals and contends the decision is not sustained by sufficient evidence, and error in admitting and excluding evidence.

In support of the contention that the finding is not sustained by sufficient evidence, appellant says the undisputed evidence shows that he induced Willis D. Williams to submit a proposition to appellees for the

rental of the property; that appellees refused to accept such proposition, but, as a counter proposition, submitted to Williams a written lease in triplicate, which Williams accepted; that, after such acceptance, Williams and appellees each signed and acknowledged the lease, a copy of the same being delivered to appellees; that such lease has never been changed, rescinded or released.

In opposition to this contention, appellees say, and there is evidence to support their contention, that, after appellant had submitted the proposition from Williams, they prepared a lease for the purpose of having the same executed; that appellant, appellees and Williams met for the purpose of executing the lease; that before the lease was signed by anyone, the question of Williams' financial responsibility was discussed and investigated; that they refused to execute the lease unless Williams gave a guaranty bond, which the latter was not at that time prepared to give; that it was suggested by appellant that since it was difficult to get Williams to come back to sign the lease, that he sign and acknowledge the lease at that time; that, in accordance with that suggestion, the three copies of the lease were then signed and acknowledged, one of which copies was given to appellant to hold until Williams gave the bond and that appellees at the time instructed appellant not to deliver the lease until the bond had been furnished; that Williams never furnished the bond, and never took, or offered to take, possession of the property and that, as a matter of fact, the lease was never executed.

The facts as found by the court are in harmony with appellees' contention, and, under the well-settled rule that this court will not weigh the evidence, the finding of the trial court must stand. Under the facts found, the lease was not intended to be effectual until the bond was furnished, was not signed by the parties with the intention that it be effective until

the bond was furnished, and was never executed, in that, there was no delivery of the required bond to appellees, or of the signed lease to Williams. If the proposed tenant was not acceptable to appellees without a bond guaranteeing payment of the rent, and no lease was executed because of the failure to provide such bond, appellant was not entitled to recover.

Appellant next contends the court erred in refusing to allow him to prove the reasonable value of the services of an agent in procuring a tenant. The undisputed evidence, as given by both appellant and appellees, is that there was an agreement that appellant was to receive a two per cent. commission on the total amount of the rent to be paid. This being true, the amount of the commission in case of a recovery was fixed and controlled by the agreement, and could not be increased nor decreased by proof of the value of such services. There is no claim that appellant partially performed and that he was prevented from performing by any act of appellees or that he was entitled to recover for part performance. The court did not err in excluding such testimony.

Appellant, while testifying as a witness in his own behalf, said the lease was signed in triplicate, one copy being delivered to appellees, one to Williams, and that the witness kept the other copy. The copy kept by the witness was introduced in evidence and marked Exhibit 1. Appellee Pinkus testified that one copy of the lease was given to appellant, with directions not to deliver it to Williams until the bond was executed, that he and Millikan each retained one of the copies of the lease, and that no copy of the lease was delivered or given to Williams. While Pinkus was being cross-examined, appellant's counsel asked him if he ever turned "back to Williams his written lease," which had been introduced as plaintiff's Exhibit 1. Appellees' ob-

jection to this question was sustained. This ruling is claimed to be reversible error. The question assumes facts not covered by the direct testimony of the witness, but in conflict with the direct and positive testimony of the witness. The question assumes a copy of the lease in question had once been in the possession of Williams and that, through some manner, it had thereafter got into the possession of the witness. There is no claim that Exhibit 1 was ever in the possession of Williams or that appellant ever parted with its possession. As was said in *Pennsylvania Co.* v. *Newmeyer* (1891), 129 Ind. 401, 28 N. E. 860, quoting from Starkie, Evidence: "Although upon cross-examination a counsel may put leading questions, those questions must not assume facts to have been proved which have not been proved, or that particular answers have been given contrary to the facts." There was no reversible error in the action of the court in sustaining the objection.

This same witness, in support of the issues presented by the cross-complaint, testified that, after signing the lease in question, the tenants then occupying the premises had been given notice to vacate. On cross-examination, he was asked if he gave such tenants any reason why he wanted them to vacate. It is the law that where the direct examination of a witness opens a general subject, cross-examination may go into any phase of that subject which tends to modify, explain, contradict, or rebut the statements made on direct examination. Appellant makes no claim that the question was proper for any reason other than that the witness had testified the tenants of the building had been given notice to vacate. The question, if answered, would not in any manner have modified, explained, contradicted or rebutted the statement of the witness that the tenants had been notified to vacate. The testimony in relation to the notice given such tenants was

introduced in support of the issues presented by appellees' cross-complaint, and that issue was decided in favor of appellant. Whether the ruling was right or wrong, appellant was not harmed by it.

Helen Costello was the private secretary of appellee Pinkus, the general agent of the Northwestern Mutual Life Insurance Company at Indianapolis. She was a witness for appellees, and, on her direct examination, said she was present on an occasion when appellant was in the office of Pinkus, and when the latter, in the presence of appellant, made a memorandum to the effect that one-half of the commission was to be paid appellant when the tenant moved in and the other half within a year; that the memorandum which was marked "defendant's Exhibit 4," was given to her and by her placed with the papers. She also said that, as a notary public, she took the acknowledgments of the several parties to the lease. On cross-examination, her attention was called to a notation on the memorandum, and she was asked if she could read and tell what it had reference to, she answered: "Yes sir, it says,—'privilege of tenants to remain and he draw their rent.'" She then proceeded to give her explanation of the provision, after which she was asked if that was the provision that was in plaintiff's "Exhibit 1, on page 4," if that was what the provision she had read referred to. An objection on the ground that the question was not cross-examination was sustained. Exhibit 1, referred to, is the copy of the lease which had been introduced in evidence. This exhibit being then before the court, a simple perusal of the same would have enabled the court to answer the question. We are not able to see how appellant was harmed by the action of the court, and he has made no attempt to show that he was harmed. In so far as we can see, neither an affirmative nor a negative answer

would have helped or harmed either appellant or appellees. The court did not err in this matter.

Louis F. Elvin, a witness for appellees, testified that he was the cashier of the National City Bank and was on the day when the lease was signed by W. D. Williams, and that at that time Williams had a credit of $22.25 in that bank. On cross-examination, he was asked, "You say W. D. Williams, was that the way the business of the Williams Auto Co., was conducted, the deposit carried, do you know?" Appellees' objection was sustained. There was no error in this ruling. Cecil Williams, who was a witness for appellant, testified that the Williams Auto Company was conducted in the name of his mother, Hannah Williams, and that it carried no account in the National City Bank.

Cecil Williams, a son of Willis D. Williams, and a rebuttal witness for appellant, testified that he was in the auto livery business; that, as manager, he saw plaintiff's Exhibit 1, or one like it at his office; at the time when the lease was signed, the company was not doing business at the National City Bank, but was doing business with the Washington Bank and Trust Company. He was then asked, "Who was in the company?" An objection to this question was sustained, and appellant offered to prove that, at the time when the lease was signed, the Williams Auto Company was a partnership; that Willis D. Williams was one of the partners; that such company had a large deposit in the Washington Bank and Trust Company, and that at that time information of that fact had come to the knowledge of appellees. This offer was refused, and is here urged as a cause of reversal. In determining whether the court erred in the exclusion of evidence, we must keep in mind the terms of the agreement between appellant and appellees; the facts relating to the signing of the

lease between appellees and Williams; and the theory of the complaint. The theory of the complaint is that appellant was to and had procured a suitable tenant and one who was acceptable to appellees, and that appellees and such tenant had entered into a lease for the property. The Williams Auto Company was a stranger to the negotiations looking to the leasing of the property. If Williams was not acceptable to appellees as a tenant without a bond guaranteeing the payment of the rent, and the lease was signed and acknowledged with the agreement and understanding that it was not to be delivered to Williams until he furnished such bond, no recovery could be had in this action. The question as to who was in the Williams Auto Company was not material to the cause on trial. There was no error in the action of the court in sustaining the objection to the question.

On cross-examination, the witness Cecil Williams, over the objection of appellant, was required to answer a question asking how many times he had been arrested, his answer being that he had been arrested four or five times, mostly for speeding, and once on a liquor charge. While we doubt the propriety of requiring the question to be answered in the instant case, where the only purpose was to discredit the witness, and where there was no claim that the witness was ever convicted, the action of the court in overruling the objection, if error, is not such an error as would justify a reversal. In this connection, it is well to keep in mind that this cause was tried by the court and not by a jury.

Judgment affirmed.

Remy, J., not participating.